```
 1              IN THE UNITED STATES DISTRICT COURT
                                     U.S. DISTRICT COURT
                                         SO. DIST. AL.
 2           SOUTHERN DISTRICT OF ALABAMA MOBILE, AL 36602

 3                    SOUTHERN DIVISION 2000 JUN 26 P 8 43

 4    * * * * * * * * * * * * * *
                                *
                                            FILED
 5    UNITED STATES OF AMERICA,  *    CRIMINAL NO.: 98-00183
                                *          CLERK'S OFFICE
 6    VS.                        *    NOVEMBER 19, 1999
                                *    COURTROOM 2B
 7    PERRY MALONE,              *    U.S. FEDERAL COURTHOUSE
                                *    MOBILE, ALABAMA
 8       Defendant.             *
                                *
 9    * * * * * * * * * * * * * *

10                        SENTENCING HEARING

11            BEFORE THE HON. RICHARD W. VOLLMER, JR.

12               UNITED STATES DISTRICT JUDGE

13                          APPEARANCES

14    FOR THE GOVERNMENT:        Deborah A. Griffin, Esquire
                                 Maria E. Murphy, Esquire
15                               Assistants to the U.S. Attorney
                                 U.S. Attorney's Office
16                               63 S. Royal Street, Suite 600
                                 Mobile, Alabama  36602
17
      FOR THE DEFENDANT:         Gary L. Armstrong, Esquire
18                               Messrs. Armstrong, Vaughn and
                                   Scroggins
19                               Attorneys at Law
                                 P. O. Box 2370
20                               Daphne, Alabama  36526

21    COURT REPORTER:            Mary Frances Giattina, RDR, CRR
                                 Official Court Reporter
22                               P. O. Box 3021
                                 Mobile, Alabama  36652-3021
23                               (334) 690-3003

24         Proceedings reported by machine stenography.

25           Transcript produced by computer.
```

1      (November 19, 1999, 8:30 a.m.)  (In open court.)

2      (Defendant present with Counsel.)

3          THE COURT:  Y'all be seated.  All right.  In the case

4  of United States versus Perry Malone, Case Number 98-183.

5      Mr. Malone, I have a motion that has been filed by you on

6  October the 25th.  I did not receive that as a result of

7  failure of communications between the Clerk's Office and the

8  Court until this past week.  Do you have anyone here,

9  Mr. Malone, who represents you other than or in addition to

10  Mr. Armstrong?

11          DEFENDANT:  Well, not at the moment, Your Honor, but

12  --

13          THE COURT:  Well, I don't want you to talk about it

14  here.  I'm going to, I'm going to recess this hearing for a

15  moment, and I'm going to have a hearing in-camera with

16  Mr. Malone, his attorney, and his attorney on the record

17  insofar as the allegations made in this motion to have

18  Mr. Armstrong removed.

19      I, of course, will hear from the Government on the issue at

20  a -- when we complete the in-camera hearing, but we are -- it

21  is my expectation that we will go forward with the sentencing

22  this morning.  That, of course, will depend on the outcome of

23  the -- of this other hearing.

24      All right.  Mr. Malone, it is my suggestion that we have

25  this hearing outside the presence of anyone other than you and

1   your attorney so that you can keep what you have to say outside

2   the general knowledge of the Government and the community.  Is

3   that -- do you ask for that, or do you want to have an open

4   hearing on this?

5          DEFENDANT:  Your Honor, I personally, I would prefer

6   just to have an open hearing.

7          THE COURT:  All right.  We will have an open hearing

8   on it.  That is fine.

9      All right.  Mr. Malone, you have filed a motion to have

10  appointed counsel, Gary Armstrong, removed, and your

11  allegations contain the following statements about

12  Mr. Armstrong, your attorney, Mr. Armstrong, for

13  misrepresentations on the Defendant's behalf.

14     Tell me exactly, Mr. Malone, what misrepresentations --

15         MS. GRIFFIN:  Judge, we'd like to have him put under

16  oath before he responds to the Court.

17         THE COURT:  All right.  That's fine.  I'll ask you to

18  come forward, Mr. Malone, and take the stand.

19     (The Defendant was placed under oath.)

20         THE COURT:  All right.  Let me see Counsel for both

21  sides, Mr. Armstrong, at sidebar just a moment.

22     (Sidebar conference, on the record, Defendant present:)

23         THE COURT:  All right.  My primary reason for the

24  sidebar conference is to be sure that I am protecting the

25  Defendant's rights.  The problem I have, and that's why I want

1   to have this in-camera so that there will be no question about

2   Mr. Malone's rights being affected by the Court's questioning.

3   I don't know how to go about that.  Mr. Armstrong, there are

4   allegations made about you.

5          MR. ARMSTRONG:  Yes, sir.

6          THE COURT:  I will tell you this in the presence of

7   Mr. Malone.  I have complete confidence that you represented

8   Mr. Malone, in my opinion, very well and ably and did an

9   excellent job.  However, Mr. Malone has made these allegations.

10  Now, I don't know whether you have any rights or not,

11  Mr. Armstrong.  I'm going to ask the Government, though, the

12  problem I have is in the Court's questioning of the Defendant,

13  Mr. Armstrong, I don't want to become a prosecutor in this

14  case.  I'm not trying to prosecute.  I'm trying to find out

15  what allegations are made.  I don't know how to do it other

16  than as I suggested originally, Mr. Malone declined to have it

17  in-camera, to be sure that he is protected from any questions

18  that I may ask.

19     Now, let me hear from the Government on your opinion on

20  that.

21         MS. GRIFFIN:  Judge, I think the first thing is that

22  allegations about problems with his attorney which are

23  privileged should be just the Court, Mr. Malone, Mr. Malone's

24  current attorney, and let -- by having it open, he waives the

25  privilege and, you know, has it in front of third parties

1   which, of course, waives the privilege.

2       I don't know that the Court should question him, but my

3   belief based on the filing of his motion has to do with an

4   ongoing investigation and not a matter that Mr. Armstrong is

5   appointed on.  Mr. Armstrong is appointed on two cases that

6   were tried, one before Your Honor and one before Judge Butler.

7       His claims appear to relate to an ongoing investigation

8   that as yet as to Mr. Malone is uncharged for which he is not

9   -- Mr. Armstrong is not appointed.  So, I don't think it has

10  any bearing as to the Court's proceedings here tomorrow.  In

11  fact, I don't think there's any duty or jurisdiction to go into

12  it.  He's uncharged as to another matter.  There's only one

13  matter before Your Honor, and that's the trial that Your Honor

14  tried.  And I think until he makes a showing that what he's

15  complaining of had to do directly with the trial before Your

16  Honor, then there's nothing to be -- nothing to hear.

17          THE COURT:  I understand that.  That's what I'm going

18  to do is to find out what his complaint is.  And what I'm

19  saying is that I'm not prosecuting Mr. Malone.  I'm simply

20  trying to find out from Mr. Malone, as you suggest, Mr. Malone,

21  you will waive your privilege for your attorney not to testify

22  in connection with this before the Government if you do this in

23  open court.  And I'm not trying to dissuade you from doing it

24  in open court.  You knew we were going to have a hearing today.

25          DEFENDANT:  Yes, sir.

```
 1              THE COURT:  You have not -- you don't have anyone, as

 2   I understand it, to represent you here other than Mr. Armstrong

 3   who has represented you in the past.  My understanding, and you

 4   can correct me on this if I'm wrong, is that Mr. Armstrong

 5   wrote me a letter.  I sent him a copy of your motion.  He

 6   advised that he tried to go down and speak to you and that you

 7   refused to talk to him in -- at the jail; is that correct?

 8              DEFENDANT:  It was sort of a misunderstanding.  The

 9   warden gave me an option to either have a visit with my aunt or

10   see my attorney, and I chose to see my aunt.

11              THE COURT:  Well, Mr. Malone, let me tell you -- the

12   problem I have is I'm also aware of what Mr. Armstrong has told

13   me about what, that the -- whoever is in charge at the jail

14   down there will be willing to testify this morning.

15              MS. GRIFFIN:  Judge, if I might, I think it benefits

16   the parties for the Court to have it ex parte, that's with

17   Malone and his attorney, because I think it protects his

18   rights.  If he wants to give up those rights, that's his

19   business, but I think the Court is wise on warning him that

20   this type hearing to protect him should be with the Court, the

21   Court Reporter, and Mr. Armstrong and Mr. Malone, because it

22   could be that various decisions are made based on whatever that

23   hearing is, and that those matters should remain sealed to

24   protect him.  But if he doesn't want to be protected . . . .

25              THE COURT:  That's fine.  Mr. Armstrong, let me tell
```

1  you so you'll know, I have a duty to make an investigation to

2  determine whether or not the allegations that you make in that

3  are adequate to require me to remove Mr. Armstrong.  Now, to do

4  that, I'm going to have to ask you certain questions.  If I do

5  this in open court, it may place you in a position of having

6  additional charges made against you as to what you testify to.

7  It may cause the Government to file another charge against you.

8  I'm not involved in any of that, but I do have the duty to make

9  this investigation, and I'm going to make this investigation.

10      As I suggested to you, I would rather do it in chambers

11  with only the Court Reporter, your attorney, you, and to find

12  out exactly what your allegations are.  That is for your

13  protection.  Now, you have waived that, but I want to be sure

14  that you waive it again under full knowledge as to what is

15  going to occur.

16      Now, you will have all of these issues on appeal.  No

17  matter what this Court does, you will have a right to appeal

18  this to another court.

19          DEFENDANT:  Right.

20          THE COURT:  You are in an area that I'm not real

21  familiar with.  Insofar as your rights are concerned, I'll try

22  to give you every right that you have.  Mr. Malone, this Court,

23  I've always tried to give every defendant every opportunity to

24  bring out everything that you have.  However, I am advising you

25  that I am going to make this investigation.  I am going to

1  question you concerning these allegations made against you.  If

2  as a result of what you say there are other charges made

3  against you, that is a possibility.  So, I'm telling you that

4  as well.

5     Now, if it's in chambers, this will all be sealed.  No one

6  will have a right to this except you, your attorney, and the

7  Government under certain circumstances where the Court opens

8  the record for the Government on appeal.

9         MS. GRIFFIN:  And Mr. Malone's appeal counsel would

10  have the opportunity.

11         THE COURT:  Well, Mr. Malone's counsel would always

12  have the opportunity to review it.

13         DEFENDANT:  Uh-huh.

14         THE COURT:  Now, I'm going to ask you once more so

15  that you'll be sure that you understand.  Under all of those

16  circumstances, are you satisfied to waive those rights and go

17  forward with this hearing in open court?

18         DEFENDANT:  Yes, sir.  All I want to do is tell the

19  truth.  That's all.  If I'm going to get charged with telling

20  the truth --

21         THE COURT:  Well, I understand what your position is

22  going to be, but I am saying to you do you want to do it in

23  open court or do you want to have this in chambers?

24         DEFENDANT:  I would rather do it in open court.

25         THE COURT:  All right, sir.  That's all that you need.

1  Okay.

2          MR. ARMSTRONG:  Your Honor, I would go on the record

3  that still being Mr. Malone's counsel, I'd advise him against

4  that.  I would advise him that he should do it in chambers.

5          MS. GRIFFIN:  And I think the Court can make the

6  decision that the Court thinks it's in his best interest where

7  the Court thinks it's an attorney-client conflict to allow the

8  Government to be privy to attorney-client communications.  I

9  think the Court should make its own ruling that it should be a

10  closed hearing.

11          DEFENDANT:  I don't understand it.  How can you just

12  -- the Judge just say that it's my privilege, and how can the

13  U.S. Attorney say it's not my privilege, it's your privilege?

14  Pretty much, that's what she just said.

15          THE COURT:  Well, I'm going to grant the privilege to

16  you, Mr. Malone.

17          DEFENDANT:  I sure appreciate it, Your Honor.

18          THE COURT:  You're going to do it.  But I am going to

19  tell -- Mr. Armstrong has represented you, in my opinion, to

20  the highest standard of an attorney.

21          DEFENDANT:  And I --

22          THE COURT:  And I want to tell you this:  You need to

23  listen to him.  You need to make your own decision, but what

24  I'm saying to you is he's recommending against it, and you may

25  want to talk to him for a moment to see why he's recommending

1    against it for your own protection.  You don't have to because

2    I am going to allow it to be in open court, and I am going to

3    make a full investigation into it in open court.  I'm going to

4    ask you questions for which you may have some legal

5    responsibility, and you may be charged as a result of your

6    testimony.  I'm not suggesting that you will be.  I'm simply

7    talking about your rights.

8              DEFENDANT:  Okay.  I appreciate that, Your Honor.

9              THE COURT:  All right.  Now, do you want to talk to

10   Mr. Armstrong or do you want to go forward with this hearing?

11             DEFENDANT:  I want to go forward with it.

12             THE COURT:  All right.  Very good.

13             DEFENDANT:  Thank you.

14        (In open court.)

15             THE COURT:  All right.  For the record, the Court

16   would note that a motion has been filed by this Defendant

17   contending that his attorney did not properly represent him in

18   the case and asking for a different attorney.  This Court has a

19   duty to make an investigation into these allegations.

20        I would caution all of those who are in court and

21   especially the newspaper reporter who is in court to understand

22   that these are only allegations by the Defendant.  There is no

23   factual support of this at this time.  The only information

24   that is being given at this time is the allegations made by

25   this Defendant against his attorney.

1    I am not suggesting to the media that they not publish

2  whatever they choose to publish, but I am cautioning everyone

3  here that the fact that these allegations are published -- and

4  I don't give legal advice, but you need to find from your own

5  attorney what the effect might be of reporting something about

6  someone under simply an allegation by one who has an interest

7  in the matter.

8    All right.  Without going further, I'm going to go back,

9  Mr. Malone, and note for the record that we had a sidebar

10  conference, it is on the record, at which time your attorney

11  and the Court recommended that you have this hearing in-camera

12  outside the general public because this is a matter relating to

13  you and your attorney; that by having this in open court you

14  waived your privilege, and you do have a privilege that your

15  attorney cannot testify in connection with what has occurred in

16  the conversations with you unless you waive that privilege.

17    By having this hearing in open court, that is a waiver.

18  Mr. Armstrong will be questioned concerning the statements that

19  you make, and he will be required to answer those questions as

20  a result of the waiver that you have given by having this

21  matter in open court.

22    You have been made aware of that, and you have stated that

23  you desire to have this hearing in open court; is that correct?

24          DEFENDANT:  Yes, sir, it is.

25          THE COURT:  All right.  The first allegation made

1    against your attorney in your motion to have him removed is

2    that Mr. Gary Armstrong, for misrepresentation on Defendant's

3    behalf, Mr. Armstrong has intentionally lied to the Defendant,

4    Perry Malone, on numerous occasions to help the Government in

5    preventing Defendant to produce documented evidence and

6    witnesses that would have been pivotal in the outcome of both

7    the Defendant's trials.

8        All right.  I will hear from you, Mr. Malone, as to each

9    and every document, witness, and individual who will testify to

10   confirm your statement that your attorney intentionally lied to

11   you and each occasion on which he did lie to you and what those

12   particular lies were.

13       All right, sir.  You may speak.  Be sure you speak -- if

14   you will sit forward and speak into that microphone so we can

15   all hear you.

16           DEFENDANT:  Yes, sir.  Well, first of all, he lied

17   about the deal with the Government conspiring to violate my

18   rights.

19           THE COURT:  I'm sorry, lied to you about?

20           DEFENDANT:  Well, he lied to me about --

21           THE COURT:  What did he say?

22           DEFENDANT:  He said that -- it's dealing with -- could

23   I explain to you in a way that I can explain it best, sir?

24           THE COURT:  Well, what I'm going to ask you to do is

25   limit your testimony to the specifics, the specific statements

1   that your lawyer made to you which you have stated in here in

2   preventing you to produce documented evidence and witnesses

3   that would have been pivotal in the outcome of both the trials.

4   Now, what did he tell you?  Did you tell him that you had

5   documented evidence?  Did you tell Mr. Armstrong that you had

6   documented evidence that would prove you were not guilty of the

7   crimes charged against you?

8           DEFENDANT:  Yes, sir, I did.

9           THE COURT:  All right.  Tell me what you told him,

10  what documented evidence you told him you had.  Give me the

11  names of every document that you told him about.

12          DEFENDANT:  My Kastigar transcripts, they were altered

13  to --

14          THE COURT:  All right.  You told him that your

15  Kastigar transcript was altered?

16          DEFENDANT:  Right.

17          THE COURT:  And was there not a hearing on that before

18  Judge Butler?

19          DEFENDANT:  No, sir.  We -- it wasn't a hearing on

20  that.  I brought that issue up, and Judge Butler, he neglected

21  to respond to that issue for at least about four months.  And

22  in my opinion, that reason is because --

23          THE COURT:  I'm not interested in your opinion at this

24  time, Mr. Malone.  What I'm asking you to do now simply is to

25  state what Mr. Armstrong told you in connection with the

1    Kastigar hearing.

2            DEFENDANT:  First of all, he told the Court that -- he

3    told me that he told the Court that I told him exactly what was

4    taken out of my transcripts and what was added to my

5    transcripts, and I didn't tell him nothing like that.  I told

6    him no more than what I told the Court.  One issue was about,

7    one issue was about U.S. Attorney Kenyen Brown perjured himself

8    on the stand.  That's what I told him.  But it's like eight or

9    nine issues on my Kastigar transcripts --

10           THE COURT:  All right.  Tell me every issue.  You told

11   him that the Kastigar hearing that was -- the trial transcript

12   was --

13           DEFENDANT:  Altered.

14           THE COURT:  -- was changed.

15           DEFENDANT:  In the Kastigar hearing, yes, sir.

16           THE COURT:  In the Kastigar hearing.  You told him

17   that the United States Attorney, Kenyen Brown, lied.

18           DEFENDANT:  That's right.

19           THE COURT:  What did Mr. Kenyen Brown lie about?

20           DEFENDANT:  He lied about he didn't have no

21   conversation or receive no letter from U.S. -- from my attorney

22   regarding --

23           THE COURT:  Your attorney being whom?

24           DEFENDANT:  Deceased Barry Hess.

25           THE COURT:  Barry Hess.  All right.

```
 1              DEFENDANT:  Yeah.  And about me and a situation
 2   dealing with my mother-in-law.  Okay.  And what happened was --
 3              THE COURT:  Well, what else did he lie about, anything
 4   else?
 5              DEFENDANT:  Yes.  He lied about --
 6              THE COURT:  Now, we're talking about the United States
 7   -- Assistant United States Attorney --
 8              DEFENDANT:  Kenyen Brown?
 9              THE COURT:  -- Kenyen Brown.
10              DEFENDANT:  Right.  Let me see.  Well, it wasn't just
11   Kenyen Brown.  It was U.S. Attorney Maria Murphy as well.
12              THE COURT:  Maria Murphy, Attorney -- United States
13   Attorney Maria Murphy lied about what?
14              DEFENDANT:  I didn't say she lied.  I'm telling you
15   what my attorney lied about.  It was regarding those two
16   attorneys and --
17              THE COURT:  And what did your attorney say to you that
18   you considered to be a lie?
19              DEFENDANT:  Well, he told me that I told him exactly
20   what was taken from my transcripts and exactly what was added
21   to my transcripts.  I didn't tell him that.  I didn't discuss
22   it with him because --
23              THE COURT:  Well, Mr. Arm -- I mean, Mr. Malone, what
24   has this got to do with the trial itself?  This hearing that
25   you are talking about, it is my understanding that there was a
```

1  hearing on the Kastigar, that all of these matters were brought

2  up.  Is that incorrect?

3          DEFENDANT:  No, sir, not the matter I'm talking about.

4  I filed a motion about -- at one time about the altering of my

5  transcripts which could have cleared me from these charges.

6          THE COURT:  Was there a hearing on that motion?

7          DEFENDANT:  No, sir, there wasn't.  There was not a

8  hearing.  And the Court has been intentionally trying to

9  seclude this information.

10          THE COURT:  All right.  Let me stop you just a minute.

11  I would ask both Counsel for the Government and Counsel -- and

12  Mr. Armstrong, if you would, to make notes on this.  I was not

13  involved in the Kastigar hearing, as you know.  As a result, I

14  don't know what was done.

15     Now, tell me this, Mr. Malone.  In connection with the

16  Kastigar hearing, that was prior to the trial in this -- before

17  this Court in the case of 98-183.  That Kastigar hearing was

18  prior to that.  The Court has knowledge of that because I was

19  aware that there was a Kastigar hearing and that Judge Butler

20  had ruled on that matter.

21     Now, did you bring that matter -- did you bring that to

22  this Court's attention before trial of this case?

23          DEFENDANT:  Yes, sir, I did.

24          THE COURT:  And was that in chambers?

25          DEFENDANT:  Yes, sir, it was.

```
 1              THE COURT:  All right.  And your position was that, as
 2   I recall, that you disagreed with the judge's ruling in that
 3   matter?
 4              DEFENDANT:  Absolutely.
 5              THE COURT:  All right.  Well, that's what I'm asking.
 6   Now, at that time, was there any discussion about
 7   Mr. Armstrong's activity in connection with that Kastigar
 8   hearing?
 9              DEFENDANT:  (No audible response.)
10              THE COURT:  My recollection is that you were satisfied
11   with Mr. Armstrong in representing you.
12              DEFENDANT:  No, sir.
13              THE COURT:  That's not correct.  I'm not suggesting
14   that I am --
15              DEFENDANT:  Okay.
16              THE COURT:  Was that all on the record?  Was that all
17   taken on the record?
18              DEFENDANT:  Yes, sir.
19              THE COURT:  It was.  The court reporter was here, so
20   we have all of that information.
21              DEFENDANT:  Yes, sir.  I said that I was satisfied
22   with him on most of the issues other than --
23              THE COURT:  The Kastigar?
24              DEFENDANT:  -- other than the Kastigar at that time,
25   yes, sir.
```

1          THE COURT:  All right.  That's my recollection as

2     well.

3          DEFENDANT:  Uh-huh.

4          THE COURT:  All right.  Now, so that at the time --

5     what are you complaining about Mr. Armstrong that he did or

6     failed to do other than in the Kastigar hearing in connection

7     with his activities as you have here that he failed to provide

8     or produce documented evidence and witnesses that would have

9     been effective in having a different result in the case tried

10    before this Court, Case Number 98-183?

11         DEFENDANT:  Well, that's a different issue itself

12    other than the Kastigar hearing.

13         THE COURT:  Yes, sir.  That's after the Kastigar

14    hearing.

15         DEFENDANT:  Okay.  So, we're finished with the

16    Kastigar hearings now?

17         THE COURT:  Yes, sir.

18         DEFENDANT:  Okay.

19         THE COURT:  What documents did you give Mr. Armstrong,

20    make him aware of that he did not produce at trial?  What

21    witnesses did you give Mr. Armstrong or note Mr. Armstrong that

22    you wanted to call that he did not call for trial?

23         DEFENDANT:  Okay.  One of the documents was a letter

24    written by my mother-in-law that in so many words says that the

25    Government has been trying to get her to lie on me about drug

1   allegations that she had no knowledge to.  And he told me that

2   -- well, I told him that my wife had the letter.  He told me

3   that he never saw a letter, he asked my wife about the letter,

4   but she says she didn't have a letter.

5       Now, my aunt told me that she notified Mr. Armstrong about

6   this letter and that he -- that she had the letter, but --

7           THE COURT:  Did you tell Mr. Armstrong to call that

8   witness to testify?

9           DEFENDANT:  No, sir.  I told Mr. Armstrong to produce

10  that letter before the Grand Jury to let them hear that letter,

11  and he failed to do that.  And that would have --

12          THE COURT:  Counsel, the Grand Jury -- Mr. Armstrong

13  has no rights before the Grand Jury as far as I know to present

14  evidence; is that correct?

15          MS. GRIFFIN:  That's correct, Your Honor.

16          THE COURT:  All right.

17          DEFENDANT:  Even if I ask him to?

18          THE COURT:  Even if you ask him to.  The Government

19  presents the evidence to the Grand Jury.  Let's talk about --

20          DEFENDANT:  Well, we had presented evidence on my

21  behalf.  We produced witnesses on my behalf.  And he was

22  willing to --

23          THE COURT:  At the Grand Jury?

24          DEFENDANT:  Yes, at the trial.

25          THE COURT:  Well, that's different.

Mary Frances Giattina, RDR, CRR, Official Court Reporter

| | |
|---|---|
| 1 | DEFENDANT:  That's what I was talking about, the |
| 2 | trial. |
| 3 | THE COURT:  So, you're saying that at the trial of |
| 4 | this case, you told him to get the letter? |
| 5 | DEFENDANT:  That's right. |
| 6 | THE COURT:  And did he say he couldn't find the |
| 7 | letter, he didn't get the letter?  Did he just tell you that |
| 8 | your wife said she didn't have the letter? |
| 9 | DEFENDANT:  Yeah.  He said my wife said she didn't |
| 10 | have the letter.  And so, but my aunt told -- |
| 11 | THE COURT:  Well, what your wife said, did you talk to |
| 12 | your wife?  Did she tell you she did have the letter? |
| 13 | DEFENDANT:  Yes, yes, sir. |
| 14 | THE COURT:  And did she bring the letter to court to |
| 15 | testify? |
| 16 | DEFENDANT:  Yes.  She brought the letter to my aunt, |
| 17 | and she -- yes, sir.  And she was going to testify -- |
| 18 | THE COURT:  Did she come to court and testify? |
| 19 | DEFENDANT:  Well, she didn't testify, but she was |
| 20 | here. |
| 21 | THE COURT:  She did not testify? |
| 22 | DEFENDANT:  She was here.  She would have. |
| 23 | THE COURT:  What are you saying, that you told your |
| 24 | attorney to have her testify and she did not testify? |
| 25 | DEFENDANT:  No, sir.  That's not what I'm saying. |

1          THE COURT:  Well, what are you saying?

2          DEFENDANT:  I am saying that I wanted the letter to be

3    read to the Grand Jury to show that this witness that was

4    testifying against me, her testimony was not credible because

5    --

6          THE COURT:  All right, sir.  Understand, we're talking

7    about the trial of this case.  We are not talking about the

8    Grand Jury.  Grand Jury is another matter.

9          DEFENDANT:  I'm talking about the trial.

10          THE COURT:  You're talking about the trial of this

11    case.  You wanted the letter read.  Whether or not the letter

12    is read is an issue of evidence.  The question is did -- was

13    that witness offered at trial?

14      (No audible response.)

15          THE COURT:  Did this witness testify against you at

16    trial?

17          DEFENDANT:  Yeah.

18          THE COURT:  The aunt?

19          DEFENDANT:  Yeah.  The witness testified against me at

20    trial, the same one that wrote the letter.

21          MS. GRIFFIN:  Judge, when he says my mother-in-law, I

22    gather he's talking about Mamie Floyd.  If he is talking about

23    Mamie Floyd, she did not testify before Your Honor in the trial

24    of 183.  She testified before Judge Butler in the trial of 184.

25          DEFENDANT:  That's right.  That's right.

1          THE COURT:  All right.  We can only talk about the

2  case I'm aware of, Mr. Armstrong.  I'm not aware of cases that

3  are tried in another court.  You can bring that up before Judge

4  Butler in a little while.  The question I have right now is,

5  are you talking about Mamie Butler, is that who you're talking

6  about?

7          DEFENDANT:  Mamie Floyd.

8          THE COURT:  Mamie Floyd?

9          DEFENDANT:  Uh-huh.

10          THE COURT:  All right.  And did she testify in this

11  case, in the case in this Court?

12          DEFENDANT:  No.  She testified in the other one.

13          THE COURT:  All right.  Did you ask your attorney to

14  have her testify in this case?

15          DEFENDANT:  No, sir.

16          THE COURT:  All right.  So, Ms. Floyd did not testify

17  in this case?

18          DEFENDANT:  No, sir.

19          THE COURT:  And that is not an issue in this case?

20          DEFENDANT:  Well, I was under the impression that this

21  was the only hearing that we was going to have regarding this

22  matter, so --

23          THE COURT:  Well, this is the only hearing I'm going

24  to have.  I am only having a hearing on Case Number 183.

25  That's all I'm aware of, Mr. Armstrong.  Judge Butler tried you

1  in another case, that's Case Number 184, and you will have to

2  bring up anything that you did before him, before Judge Butler

3  because I'm not aware of that.  I'm asking you to specifically

4  limit your testimony as to what your attorney did or failed to

5  do in this case.

6      Now, going back to documents, what document did he not

7  present in this case that you told him to present?

8          DEFENDANT:  In this case.

9          THE COURT:  In this case.

10          DEFENDANT:  Let me see.  Well, in this particular case

11  --

12          THE COURT:  Can you refer to any specific document?

13          DEFENDANT:  Well, in this particular case, it was --

14  there were witnesses that he didn't -- he didn't produce.

15          THE COURT:  All right.  We'll get to witnesses

16  momentarily.  We're talking about documents now.

17          DEFENDANT:  Documents.  I can't recall of any

18  documents regarding this case.

19          THE COURT:  All right.  Then let's go to witnesses.

20  What witnesses did you -- would have testified on your behalf?

21  Give me the names of those witnesses and what their testimony

22  -- what you told your attorney their testimony would be, the

23  names of every witness that you testify that you told your

24  attorney of that you wanted called on your behalf in the case

25  that was tried in this Court, Case Number 98-183.

1          DEFENDANT:  Well, there was a Correction Officer King,

2   A. King.  He had --

3          THE COURT:  A as in -- initial A. King, K-i-n-g?

4          DEFENDANT:  Uh-huh.  I don't know his first name.  It

5   begins with "A."

6          THE COURT:  All right.  You asked him to call

7   Probation Officer A. King?

8          DEFENDANT:  No.  He's a correction officer.

9          THE COURT:  Sorry.  Correction Officer A. King?

10         DEFENDANT:  Uh-huh.  And he came here to testify.  Now

11  --

12         THE COURT:  Was he subpoenaed by your attorney?

13         DEFENDANT:  Yes, sir.  He was subpoenaed.

14         THE COURT:  And he came to court.  He was at court?

15         DEFENDANT:  Well, he was outside -- well, I didn't see

16  him because he didn't come inside the courtroom, but he --

17  Mr. Armstrong said he spoke with him outside the Court.  And

18  Mr. Armstrong told me that, that his testimony --

19         THE COURT:  Mr. King's testimony?

20         DEFENDANT:  Uh-huh.  -- was the same testimony as the

21  witness that he was supposed to be testifying against.  And

22  that was not his testimony.

23         THE COURT:  Well, did you talk to Mr. King?

24         DEFENDANT:  Yes.  I talked to Mr. King --

25         THE COURT:  When did you talk to Mr. King?

1       DEFENDANT:  Before trial.

2       THE COURT:  Where did you talk to Mr. King?

3       DEFENDANT:  At the Metro Jail.

4       THE COURT:  He came down to talk to you at the Metro

5  Jail?

6       DEFENDANT:  Yes, sir.  When I was -- I was --

7       THE COURT:  Wait one second.  Yes, sir.

8       MR. ARMSTRONG:  Your Honor, this Correction Officer

9  King is one of the witnesses that Your Honor would not allow me

10  to call as a witness.

11       THE COURT:  All right.  Then we'll move on to another

12  point.

13       DEFENDANT:  I don't remember him not being --

14       THE COURT:  Well, this will be in the record.  If

15  that's incorrect, you will have that on appeal.  Tell me the

16  name of another witness that you say that you told your

17  attorney to call that was not called.

18       DEFENDANT:  Bert Noojin, an attorney here in Mobile.

19       THE COURT:  Bert Noojin.  Was Mr. Noojin subpoenaed

20  for trial?

21       DEFENDANT:  He was supposed to have been, but I don't

22  think he was.

23       THE COURT:  All right.  Did you talk to Mr. Noojin?

24       DEFENDANT:  No, sir.

25       THE COURT:  Did you ever -- did you know what

1  Mr. Noojin was going to say?

2          DEFENDANT:  Yes, sir.

3          THE COURT:  How did you know what Mr. Noojin was going

4  to say?

5          DEFENDANT:  Mr. Armstrong told me.

6          THE COURT:  Mr. Armstrong told you what Mr. Noojin

7  would say?

8          DEFENDANT:  Uh-huh.

9          THE COURT:  All right.  And what did Mr. Armstrong

10 tell you Mr. Noojin would say?

11         DEFENDANT:  That -- he said in so many words, no, I

12 don't believe Mr. Malone was a big-time drug dealer like the

13 U.S. Attorney is making him out to be.  And he said that -- the

14 only thing he said that was not in my favor was back in '92 or

15 '93, I drove an old model purple Mercedes which only costed a

16 couple thousand dollars.  And he said other than that there, he

17 didn't have -- I didn't have any money because he was looking

18 for me --

19         THE COURT:  Is that what he said?

20         DEFENDANT:  Yes.

21         THE COURT:  He told Mr. Armstrong this, that you

22 didn't have any money?

23         DEFENDANT:  No.  He said he didn't believe that I was

24 a big-time drug dealer because I owed him money.

25         THE COURT:  Big-time drug dealer.  What else would he

1    testify?  What else would he have testified to?

2              DEFENDANT:  Well, that's pretty much it.

3              THE COURT:  All right.  All right.  Who else?

4         (No audible response.)

5              THE COURT:  What other witness that you told

6    Mr. Armstrong to call that he did not call?

7              DEFENDANT:  Okay.  Patrick Lilly.

8              THE COURT:  Patrick?

9              DEFENDANT:  Lilly.

10             THE COURT:  Lilly, L-i-l-l-y?

11             DEFENDANT:  Uh-huh.  Now, this particular witness --

12             THE COURT:  Did you tell him to call Mr. Lilly?

13             DEFENDANT:  Yes, sir.

14             THE COURT:  And did you tell Mr. Armstrong what

15   Mr. Lilly would testify to?

16             DEFENDANT:  Yes, sir.

17             THE COURT:  All right.  And what do you say Mr. Lilly

18   would testify to?

19             DEFENDANT:  That Government agents --

20             THE COURT:  Government agent being whom?

21             DEFENDANT:  Don Walton and Alan Ducote, they were

22   trying to intimidate him to lie on me.  They were pretty much

23   asking him to tell lies on me about drug dealings.

24             THE COURT:  All right.  Now, you say pretty much,

25   Mr. Malone.  That's --

1        DEFENDANT:  Well, he didn't say --

2        THE COURT:  Are you saying that he told you, Patrick

3   Lilly told you that these two officers attempted to induce him

4   to perjure himself?

5        DEFENDANT:  Yeah.  He told --

6        THE COURT:  Is that what he told you?

7        DEFENDANT:  No.  That's what he told my aunt.  And --

8        THE COURT:  That's what he told your aunt?

9        DEFENDANT:  Uh-huh.

10       THE COURT:  All right.  Do you have any knowledge of

11   what he said, you personally?

12       DEFENDANT:  No, sir.  But I feel like my --

13       THE COURT:  Well, I know what you feel like.  Did you

14   -- did Mr. Armstrong talk to your aunt?

15       DEFENDANT:  Not about him.  And neither did he talk to

16   Patrick Lilly.  And I thought he should have been obligated to

17   at least question the, you know, the witness in my behalf.

18       THE COURT:  All right.  And who else now?

19       DEFENDANT:  Okay.  Well, there's another U.S.

20   Attorney, Donald Partridge, which was a partner of the lawfirm

21   of Hess and Atchison.

22       THE COURT:  You're going to have to -- I'm sorry, I'm

23   not following you.  You say Donna?

24       DEFENDANT:  Donald.

25       THE COURT:  Donald.

1          DEFENDANT:  Donald Partridge.

2          THE COURT:  Donald Partridge.  He is an attorney?

3          DEFENDANT:  Uh-huh.

4          THE COURT:  Did you say he was a United States

5    Attorney?

6          DEFENDANT:  No.  He's, he's got his private practice.

7          THE COURT:  All right.  And Mr. Partridge, what

8    knowledge does he have of the crime charged in Case Number 183?

9          DEFENDANT:  That's the next case.

10         THE COURT:  I'm sorry?

11         DEFENDANT:  That's the next case.  I'm sorry.

12         THE COURT:  That's in the 184?

13         DEFENDANT:  Uh-huh.

14         THE COURT:  All right.  Limit it to 183.

15         DEFENDANT:  Okay.

16         THE COURT:  And this case, 183, was tried in this

17   Court before Judge Butler tried Case Number 184; is that not

18   correct?

19         DEFENDANT:  Yes, sir, that's correct.

20         THE COURT:  All right.

21      (Brief pause.)

22         DEFENDANT:  And let me see.  Debbie Carney.

23         THE COURT:  Debbie?

24         DEFENDANT:  Carney.

25         THE COURT:  Could you spell the last name?

```
 1            DEFENDANT:  I think it's C-a-r-n-i-e (sic).

 2            THE COURT:  Debbie Carney.  And who is she?

 3            DEFENDANT:  She's the general manager at the -- at

 4   Regions Bank where my account was, the business account.

 5            THE COURT:  All right.  What did she know about this

 6   crime, Case Number 183?

 7            MR. ARMSTRONG:  Your Honor, Debbie Carney was called

 8   in this case.  She testified.

 9            THE COURT:  All right.  She testified.

10            DEFENDANT:  Yes, sir.  She did testify -- she

11   testified -- no, she testified in this case.  She didn't

12   testify in the other case.

13            THE COURT:  All right.

14            DEFENDANT:  But I -- but she was a witness, she was

15   supposed to have been a witness in both cases, and her

16   testimony should have related to both cases.

17            THE COURT:  All right.  But this -- I'll let you raise

18   that in the other case.  Mr. Malone, I can only handle matters

19   that came up in this case.  So, if she testified in this case,

20   let's move on to -- well, let's move on to what other witness

21   may have testified or did or did not testify.

22            DEFENDANT:  Okay.  Then there's a -- there's a Stefan

23   Smith, Steven Smith, Stefan Smith, I believe, is how he

24   pronounces his name.

25            THE COURT:  Stefan Smith?
```

1      DEFENDANT:  Uh-huh.

2          THE COURT:  And what did Mr. or Ms. Smith have -- know

3  about the case 183?

4          DEFENDANT:  Well, his testimony would have also --

5          THE COURT:  What did he know about this case?

6          DEFENDANT:  Well, he was supposed to have been called

7  for this case, but his -- it wasn't direct information towards

8  this case.  It was information towards an agent that was on

9  this case.

10         THE COURT:  All right.  Who was the agent?

11         DEFENDANT:  Don Walton.

12         THE COURT:  All right.  And this witness would testify

13 to what about Don Walton?

14         DEFENDANT:  His conduct, how he tends to intimidate

15 people and violate their rights.

16         MS. GRIFFIN:  Your Honor, Mr. Walton did not testify

17 in 183.

18         THE COURT:  All right.  I understand that.

19         MR. ARMSTRONG:  Also, Your Honor, he was -- a petition

20 was filed, and the Court would not allow us to use him also.

21         THE COURT:  That's my recollection, Mr. Armstrong and

22 Mr. Malone.  I believe that all of these matters, were they not

23 taken care of at the pretrial conference that we had in

24 chambers concerning the people who were going to be called to

25 trial?  Didn't we bring up these names before?

```
 1          DEFENDANT:  Well, the Court limited a lot of
 2    witnesses, but it's a couple of witnesses that I can recall
 3    that was not limited.  And I believe he was one of them, and CO
 4    King was one of them.  And my attorney didn't say that he
 5    couldn't testify.  My attorney -- he came here to testify, CO
 6    King, and my attorney said that he didn't let him testify
 7    because it wasn't very helpful to us.  That was -- those were
 8    his exact words.  It wasn't that the Court wouldn't allow him
 9    to testify.
10          THE COURT:  Mr. Armstrong, did I rule that he would
11    not be allowed to testify?
12          MR. ARMSTRONG:  To the best of my memory, Your Honor,
13    that's correct.  What Mr. Malone said about me saying Mr. King
14    is absolutely, completely, and totally false.  I was prepared
15    to call him.  The one witness on this list that the Court did
16    not exclude was Bert Noojin, but I'll talk about Bert Noojin
17    when Your Honor will want to.
18          THE COURT:  All right.  All right.  Going back to the
19    witness before that you said that Mr. Armstrong did not call in
20    184, who was that?  What was that woman's name again?
21          DEFENDANT:  Debbie Carney?
22          THE COURT:  I don't remember.  Debbie Carney, is that
23    the one?
24          DEFENDANT:  (No audible response.)
25          THE COURT:  Did you tell him -- when did you tell him
```

 1  to have Debbie Carney testify?  Was that before this case was

 2  tried?

 3       DEFENDANT:  Both cases, she didn't -- he said she

 4  didn't come on the second one because of -- she was out of

 5  town, but I didn't have a problem with that.  The point is the

 6  Court allowed --

 7       THE COURT:  All right.  Well, if you didn't have a

 8  problem with it, then let's not go into that on the other case.

 9       DEFENDANT:  But I did have a problem with this

10  particular witness, her testimony.  It was -- the Court allowed

11  Mr. Armstrong to read -- to say what she would have said, and

12  it wasn't a big issue --

13       THE COURT:  This is in Case Number 184?

14       DEFENDANT:  Yes, sir.

15       THE COURT:  And that occurred after this case was

16  tried, our case was tried?

17       DEFENDANT:  Yes, sir.  But it reflects on the first

18  case.

19       THE COURT:  All right.  Well, I agree with that.  And

20  what did Mr. Armstrong do in that case?  You say he testified

21  as to what she would say?

22       DEFENDANT:  What she said in the prior trial.

23       THE COURT:  What she said in this trial?

24       DEFENDANT:  Uh-huh.  And I told him before he even

25  said what she had said, he said -- well, she said that

1    Mr. Malone had had at least 15 to 20 -- no, she spoken to me at

2    least 15 or 20 times about my financial situation and my NSF

3    checks, my checks being returned to the bank, and I need to

4    quit writing checks when I don't have the money to pay for

5    them.

6        Now, Mr. Armstrong said that in the second case that she

7    said I had that problem, she's spoken to me a couple of times

8    or a few times, you know, regarding that issue.  And I think

9    that's -- 15 to 20 times is a big difference from a few times.

10   That's my point.  And I told him before he --

11              THE COURT:  All right.  I'll note that for the record.

12   All right.

13              MR. ARMSTRONG:  Your Honor, briefly, dealing with

14   Ms. Carney, she was subpoenaed for the second trial.  I believe

15   it was Tuesday we found out that she was going to be out of

16   town until Thursday.  I spoke with Ms. Griffin.  We tried to

17   get Your Honor's Court Reporter sitting in court today to see

18   if I could contact her to transcribe Ms. Carney's testimony to

19   read.  We were not able to make contact until roughly mid

20   Wednesday afternoon after the trial was concluded.

21       In lieu of having to delay the trial for two days, it was

22   proposed that we could offer a proffer as to what this witness

23   would testify to.  Ms. Griffin agreed.  Mr. Malone agreed.  We

24   offered a proffer to that jury as to what this witness would

25   testify to.  She was out of town in violation of the subpoena,

1   the trial couldn't be delayed, and we tried to get a transcript

2   of what she said, but he agreed to a proffer and it was read to

3   the jury.

4          THE COURT:  All right.  The Court will note that for

5   the record.  All right.

6          DEFENDANT:  Well, he should have read --

7          THE COURT:  Well, this is -- this will be on the

8   record, Mr. Malone, and you can have all of this on appeal.

9      Now, tell me what other witnesses that he failed to call or

10  refused to call.

11         DEFENDANT:  Well, let me see.  That may be the only

12  witness other than Pam McCarty, which was a Government witness.

13  And I believe that -- well, she testified in both trials for

14  the Government.  And she, and she lied in the first trial.  She

15  denied something in the first trial, but in the second trial,

16  she admitted it.

17         THE COURT:  All right.  Counsel -- I mean, Mr. Malone,

18  that's on the record.  That will be on the record.  You'll have

19  that on the record.

20         DEFENDANT:  Okay.

21         THE COURT:  But your -- she was called at the trial?

22         DEFENDANT:  Yeah, on the Government's behalf.  But my

23  counsel, the counsel -- my attorney should have asked her or

24  let the jury knew that she lied before.  She lied in the first

25  trial.

1    THE COURT:  All right.  That will all be on the

2  record.  All right.  Now, the next -- any other witnesses?

3  Does that take care of the witnesses?

4    DEFENDANT:  Yes, sir, I believe that does.

5    THE COURT:  All right.  Now, the next complaint that

6  you make is that your attorney intentionally deceived you by

7  telling you that he was going to refile his pro se motion which

8  was filed in April of this year to have Judge Butler recused

9  for demonstrative bias.  I know you're not familiar with all of

10  the terms, but when you say his pro se motion, did you file a

11  motion, a personal motion in the other case --

12    DEFENDANT:  I thought I said my pro se motion.

13    THE COURT:  I'm sorry?

14    DEFENDANT:  I thought I had wrote my pro se motion.

15    THE COURT:  You had filed a motion in the other case

16  to have Judge Butler recuse himself?

17    DEFENDANT:  Yes, sir.

18    THE COURT:  Was that ruled on by Judge Butler?

19    DEFENDANT:  No, sir.

20    THE COURT:  It was never ruled on by Judge Butler?

21    DEFENDANT:  No, sir.  Judge Butler had stricken all of

22  my motions from the Court records because of appointed attorney

23  Gary Armstrong.

24    THE COURT:  Because of?

25    DEFENDANT:  Because he appointed me an attorney.

1          THE COURT:  All right.  So, he appointed you an

2   attorney and struck your pro se motions.  Did you ask

3   Mr. Armstrong to file a motion to have Judge Butler recuse

4   himself?

5          DEFENDANT:  Yes, sir.  I asked him to refile my

6   motion.

7          THE COURT:  All right.  Did he refile your motion?

8          DEFENDANT:  No, sir.  He filed a motion to have him

9   recused, but not for those -- not on those grounds.

10          THE COURT:  What was the grounds that you wanted him

11   to recuse himself?  Why did you ask Judge Butler to recuse

12   himself?

13          DEFENDANT:  Because --

14          THE COURT:  What grounds did you tell him that you

15   wanted alleged?

16          DEFENDANT:  (No audible response.)

17          THE COURT:  Did you tell Mr. Armstrong to use?

18          DEFENDANT:  The same grounds, the grounds that I filed

19   in that motion, which were -- let me see how to say this.  I

20   was -- I was literally --

21          THE COURT:  Well, I know what you were.  The question

22   is what did you tell Mr. Armstrong to set out against Judge

23   Butler that he should not try your case?

24          DEFENDANT:  Because he took part in that Kastigar

25   hearing on violating my rights.

```
 1                 THE COURT:  All right.  Anything else?

 2                 DEFENDANT:  (No audible response.)

 3                 THE COURT:  Any other grounds that you told or that

 4   you used in your motion to have --

 5                 DEFENDANT:  No, sir.  It was basically issues relative

 6   to the Kastigar hearing, both Kastigar hearings.

 7                 THE COURT:  Because of his ruling in Kastigar?

 8                 DEFENDANT:  No, it wasn't just because of his ruling.

 9   It was because of the activities that went on in the Kastigar

10   hearing that he overlooked.  Well, he saw it and -- but he

11   didn't see it.  He intentionally looked over it.

12                 THE COURT:  All right.  What did your lawyer do?  He

13   did not raise what issues?

14                 DEFENDANT:  He didn't refile that -- my pro se motion.

15                 THE COURT:  All right.  He did not refile your pro se

16   motion to --

17                 DEFENDANT:  He told me he was going to -- we agreed

18   that he would do that, but when he did it, he filed one of his

19   own instead of mine.  And it was totally irrelevant.

20                 THE COURT:  Inadequate?

21                 DEFENDANT:  Yeah, inadequate.

22                 THE COURT:  All right.  What else did he do?  Let's

23   see what you've alleged.  All right.  You say Mr. Armstrong was

24   also aware of the fact that the Government had conspired to

25   violate your rights by altering transcripts in both Kastigar
```

1  hearings in an attempt to cover up the fact that this
2  conspiracy to take away your freedom had begun before the
3  Defendant was arrested.  And Mr. Armstrong also had information
4  that the Government had been conspiring with other inmates to
5  frame the Defendant for a murder of a Government witness.
6  Mr. Armstrong has reiterated to the Defendant after
7  interviewing several inmates that had given him statements that
8  confirmed the existence of this conspiracy that he believed it
9  and that it didn't surprise him.

10      All right.  Let's stop there for a moment.  Now, tell me
11  what Mr. -- what Mr. Armstrong told you about his knowledge of
12  any conspiracy to violate your rights, any alteration of
13  transcripts that he had knowledge of, any witnesses that he had
14  interviewed that said that the Government had conspired with
15  inmates to frame you for a murder of a Government witness.

16          MR. ARMSTRONG:  Your Honor, before Mr. Malone answers
17  that, the first part of that Kastigar does deal with this case.
18  The second part are those same three witnesses that Mr. Malone
19  approached the Court about at sidebar.  This is a case that has
20  not been charged.

21      And I would advise Mr. Malone as his counsel that I don't
22  think he needs to get into that on the record in a case that's
23  not charged.  There has been numerous other things that have
24  occurred prior to Mr. Malone writing this letter that we can
25  cover at sidebar, but I don't think Mr. Malone needs to testify

1  about an issue of a case that he may potentially be charged

2  with.

3          THE COURT:  You're advising him not to testify?

4          MR. ARMSTRONG:  About that particular point.  And

5  Kastigar, whatever he wants to do is fine, but about these

6  other Government witnesses, I would say that that needs to be

7  under seal.

8          THE COURT:  All right.  Mr. Malone, you've heard your

9  -- the recommendation of your counsel concerning these other

10  matters and that how it may affect you in a later trial if

11  there is a trial, a murder trial, if there is such a trial.  Do

12  you agree that this should be off the record insofar as that,

13  or do you want to go forward and put it all on the record?

14          DEFENDANT:  (No audible response.)

15          THE COURT:  You've heard him say it may be against

16  your best interest, Mr. Malone.

17          DEFENDANT:  Well, Your Honor, I believe I know what

18  he's referring to.  One of the witnesses that he interviewed on

19  my behalf, the Government interviewed him a few days later and

20  --

21          MR. ARMSTRONG:  Your Honor, again, I'd ask the Court

22  to get a decision from Mr. Malone before he starts talking

23  about this because I think this could be adverse to Mr. Malone

24  unless it's done in camera and under seal.

25          THE COURT:  All right.  Mr. Malone, you've heard it.

1    And don't tell us anything about it until you make your

2    decision as to whether you want this on the record where if it

3    is on the record so you know your Fifth Amendment rights, that

4    if you testify here today, all of this testimony will be

5    available for use in any other trial at any time in the future

6    as to any charges that may be made against you. So, if you

7    testify here, not only will it be subject to being used, but it

8    is also sworn testimony and you will be bound by the testimony

9    insofar as your being under oath here today.

10        DEFENDANT: I really don't know what my attorney is

11   referring to. Do you think maybe I could speak with him on the

12   side so I could make that decision, because I don't --

13        THE COURT: All right. You can go in the back of the

14   Court into the Jury Assembly -- I mean, the juryroom and

15   discuss it with Mr. Armstrong. And we're going to have a

16   15-minute recess while you and Mr. Armstrong discuss it back

17   there. There are restrooms back there, Mr. Armstrong, that you

18   can both use. We will be in recess for 15 minutes. Would you

19   take the Defendant into this juryroom, please, with

20   Mr. Armstrong.

21        All right. We're going to be in recess 15 minutes.

22        (Recess from 9:40 to 9:50 a.m.)

23        (Hearing resumed.)

24        THE COURT: All right. Have a seat, Mr. Malone. All

25   right. Is everyone back in court? It appears that they are.

1    All right.  Mr. Malone, you have talked to your attorney

2  who was advising you in connection with any statements that you

3  might make concerning matters as it relates to another possible

4  charge.  Have you decided what you would like to do on that,

5  Mr. Malone?

6           DEFENDANT:  Yes, sir.

7           THE COURT:  And what is your decision?

8           DEFENDANT:  I would like to testify.

9           THE COURT:  You do want to testify.  Very good.  All

10  right.  Now, if we will, I'm going to go back and ask you the

11  same question that I asked you earlier.  You were -- you allege

12  here that Mr. Armstrong was aware that the Government had

13  conspired to violate your rights by altering the transcript in

14  both Kastigar hearings in an attempt to cover up the fact that

15  this conspiracy to take away your freedom had begun before you

16  were arrested.  Now, that is in connection with your earlier

17  statement that there were changes made in that record; is that

18  right?

19           DEFENDANT:  Yes, sir.

20           THE COURT:  All right.  And you say that Mr. Armstrong

21  told you that he was aware that -- of these changes in the

22  record?

23           DEFENDANT:  He said --

24           THE COURT:  What did he -- what are you saying

25  Mr. Armstrong was aware of insofar as a conspiracy to violate

1  your rights and take away your freedom is concerned?  What are

2  you saying that he knew?

3        DEFENDANT:  Well, after reading the transcripts, he

4  believed that -- he said to me that something is not right

5  about these transcripts, something just didn't make sense.  But

6  I knew exactly what wasn't right.  I was at the hearing.

7        THE COURT:  All right.  Well, you may have known, but

8  he told you he knew there was something that was not right?

9        DEFENDANT:  Yes, sir.

10       THE COURT:  About that -- about what was set out in

11 that hearing?

12       DEFENDANT:  Yes, sir.

13       THE COURT:  And he did not then -- what did he fail to

14 do in that regard?  Did he question the Kastigar hearing?  Did

15 he object to it?

16       DEFENDANT:  Yes, sir.  He -- at my request, he brought

17 the issue up before the judge on numerous occasions, orally and

18 written motions, but it took some months before he actually got

19 a response.

20       THE COURT:  Well, Counsel, you -- I'm sorry,

21 Mr. Malone, you know, the Judge, you may have a complaint about

22 the Judge's ruling, but you have no complaint about

23 Mr. Armstrong bringing this matter up; is that correct?

24       DEFENDANT:  Well, my problem is it's not that he

25 didn't bring the matter up.  The problem is he told the Court

1   that he knew exactly what parts of the transcripts were

2   altered.

3        THE COURT:  Mr. Armstrong testified or stated in open

4   court that he knew what part of the Kastigar transcripts were

5   incorrect?

6        DEFENDANT:  Yes, sir.  And I thought he said that

7   because he was going to come and talk with me and for me to

8   give him all the information.  But I gave him no more than what

9   I gave Your Honor in open court.  I told him one particular

10  issue.  But I told you there are many issues that have been

11  altered in my transcripts to cover up this conspiracy that I'm

12  talking about.

13       THE COURT:  All right.

14       MR. ARMSTRONG:  Your Honor, I think a brief summary

15  that I think Mr. Malone will agree with.  In reading the

16  Kastigar hearing, there were a series of questions that didn't

17  make sense to me as to why there were not followup questions

18  asked by counsel at that time.  That's what Mr. Malone's

19  referring to where he said I knew of other things.  It just

20  didn't make sense to me that certain followup questions would

21  not have been asked.

22     We filed for the transcript.  After we filed for -- to

23  allow Mr. Malone to hear the tape along with the transcript,

24  that was denied.  It was brought up again in a pretrial

25  conference with Magistrate Milling.  Magistrate Milling

1   directed us to refile and to point out the portions that

2   Mr. Malone thought were altered.  Mr. Malone told me portions

3   that he thought were altered.  That was pointed out.

4       Judge Butler allowed me to hear those portions, of which

5   the part that I thought should have been followup questions was

6   what I listened to.  And it said, virtually, the tape what the

7   transcript said.  There were a few ahs and uhs and things such

8   as that that were not there.

9       What Mr. Malone is now referring to, I think, is there are

10  other areas of the Kastigar that he hasn't told me about that

11  he thinks are altered.  And that's the same thing that he told

12  Your Honor in chambers during trial that Your Honor said, how

13  can I bring those up if I don't know what they are, and

14  Mr. Malone said, well, I haven't told him what those are.  And

15  I think that's still what he's talking about.

16          THE COURT:  All right.  Is that correct?

17          DEFENDANT:  Partly correct.  It's not all --

18          THE COURT:  All right.  Well, you correct it as you

19  see it.

20          DEFENDANT:  Okay.  Okay.  Judge Milling didn't suggest

21  that we -- I tell him what parts of the transcript were

22  altered.  Judge Butler suggested that.  And in open court at

23  that hearing, Ms. Griffin said that that's what Judge Butler

24  had asked.

25          THE COURT:  Let me stop you, Mr. Malone, so you

1   understand what I'm asking you.  Those are all on the record.

2   All of that will be on the record.  You will have all of those

3   issues on appeal.

4       What is your complaint about Mr. Armstrong concerning the

5   fact that he was aware that the Government conspired by

6   altering transcripts in an attempt to over -- to cover up the

7   fact that this conspiracy began before you were arrested?  What

8   did he know about any conspiracy?  What do you allege that he

9   told you that he knew about any conspiracy?

10          DEFENDANT:  Well, he said that he believed -- in so

11  many words, he believed that something is not right about the

12  transcript, something, from reading it.

13          THE COURT:  All right.  Well, he just testified what

14  he said.  Is that what he told you, or are you saying that he

15  said something else?

16          DEFENDANT:  Yeah, he said something else.  He said

17  that --

18          THE COURT:  What else did he say?

19          DEFENDANT:  He said that I told him the issues on the

20  transcript that were altered.  I did not tell him that.  I told

21  him one particular issue.  There were many that were altered.

22  I told him the only one I told him was the one that I told

23  Judge Butler in open court, but there are a lot of places.

24          THE COURT:  All right.  Well, we -- I think we have

25  already had a hearing on that, Mr. Malone.  Did we not have

1  that hearing?  And you will have all of that on the record.

2      All right.  Let's move on to the next issue, that

3  Mr. Armstrong also had information that the Government had been

4  conspiring with other inmates to frame you, the Defendant, for

5  the murder of a Government witness; that Mr. Armstrong has

6  reiterated to the Defendant after interviewing several inmates

7  that had given him statements that confirm the existence of

8  this conspiracy, and that he believed it and it didn't surprise

9  him.

10     Now, this is what your attorney suggested you not testify

11 to and asked you to be -- to protect your rights in this

12 regard.  You stated as you came out that you talked to your

13 attorney, you heard his recommendation, but that you wanted to

14 testify on this issue; is that correct?

15          DEFENDANT:  Yes, sir, it is.

16          THE COURT:  All right.  Then you may answer the

17 question.

18          MS. GRIFFIN:  Your Honor, Mr. Armstrong -- first,

19 Mr. Malone is not currently charged with anything other than

20 the two cases that he has been convicted on.  Second,

21 Mr. Armstrong was appointed under the CJA as to those two

22 cases.  It is our contention that this matter is not properly

23 before the Court, nor is it a proper matter for Mr. Armstrong

24 in connection with his appointment on the two drug cases, and

25 further that it has absolutely no bearing as to the guilt or

```
 1    innocence on the trial of 183 which occurred before Your Honor.
 2         THE COURT:  Counsel, I have no -- I have no question
 3    about what you have just said, but the objection made by the
 4    Defendant in this case is that he wants the counsel replaced
 5    because he has not properly represented him throughout the
 6    trial, and not only this trial but another trial.  And under
 7    those circumstances, I'm going to let him bring out everything
 8    on every trial as to -- up to this point so that I can
 9    determine whether or not Mr. Armstrong, in the Court's
10    judgment, is competent and is properly representing this
11    Defendant throughout all of these matters.  And I'm going to
12    let him testify to it, and I'll overrule your objection.
13         Go ahead.
14         DEFENDANT:  Well, he -- after interviewing these three
15    witnesses --
16         THE COURT:  What witnesses did he interview?  Did he
17    tell you what witnesses he interviewed?
18         DEFENDANT:  Uh-huh.
19         THE COURT:  Tell me the names of the witnesses he told
20    you he interviewed.
21         THE WITNESS:  I believe one of them was Devon Hill.
22         THE COURT:  Devon Hill, H-i-l-l?
23         DEFENDANT:  Uh-huh.
24         THE COURT:  All right.
25         DEFENDANT:  Another one was Terrence Moseley.
```

```
 1          THE COURT:  Terrence Moseley.
 2          DEFENDANT:  The other one was -- here is my paper, but
 3   my attorney probably got the name on top of his head.
 4          MR. ARMSTRONG:  If he's asking me to repeat that name,
 5   I will.  Is that what you're asking me to do?  Gerald --
 6          THE COURT:  Do you say you have a paper?  Do you have
 7   a paper here?
 8          DEFENDANT:  Yes, sir.
 9          THE COURT:  With the name on it?
10          DEFENDANT:  Yes, sir, but I don't have to.  I know it
11   now.  He's told me the first name.  I know it.
12          THE COURT:  All right.  Go ahead.
13          DEFENDANT:  Gerald Watkins.
14          THE COURT:  Gerald Watkins.
15          DEFENDANT:  Watkins.
16          THE COURT:  All right.  And he said that he
17   interviewed these individuals, and that they had given him
18   statements?
19          DEFENDANT:  Uh-huh.
20          THE COURT:  And that that confirmed the existence of
21   the conspiracy, that he believed it, and that it didn't
22   surprise him?
23          DEFENDANT:  Yes, sir.  That's -- those were the exact
24   words he told me that -- I said, my words, my statement was,
25   can you believe that the Government would actually do this, you
```

 1 | know, try to frame me for this murder?  And he said, well, it
 2 | doesn't surprise me.  I've seen stranger things.  Those were
 3 | his exact words.
 4 |      THE COURT:  All right.  Now, what -- doesn't that
 5 | indicate to you that he was properly representing you?
 6 |      DEFENDANT:  No, sir.
 7 |      THE COURT:  What complaint do you have about that?
 8 |      DEFENDANT:  Okay.  Okay.  The problem I have about
 9 | that is that you, after you -- after he related this
10 | information to you at my request --
11 |      THE COURT:  Wait a minute.  Mr. Malone, he did not
12 | give me the names of anything.  All we had at sidebar was some
13 | sidebar conference concerning whether he had done some work on
14 | this other case, and I said that he did not represent you in
15 | that case and that that was not a matter that would come up at
16 | the trial of the case that we had, 183; isn't that correct?
17 |      DEFENDANT:  Partly.  You also said that if he feels
18 | that any of this information is true, then he should refer it
19 | to the U.S. Attorney, Janet Reno.
20 |      THE COURT:  That's right.  And what I said was that if
21 | he had -- if he believed from his investigation that this
22 | United States Attorney's Office was violating your rights or
23 | anyone's rights, that he should make that report to the
24 | Attorney General of the United States, or you could make that
25 | report to the Attorney General of the United States.

```
 1              DEFENDANT:  Yes, sir.

 2              THE COURT:  All right.  Now, that, that I remember.

 3  Now -- and you are complaining that he did not do that?  Is

 4  that what your complaint is, that he did not make that report

 5  of the conspiracy of the Government, the local Attorney's

 6  Office to the Attorney General of the United States?

 7              DEFENDANT:  Well, for some time he didn't, until after

 8  I filed the motion is when I found out that he -- he came and

 9  visited me after he received my motion to have -- to request

10  the Court to have him removed.  He came to me with a letter

11  that was dated prior to my motion.  Now, the letter didn't --

12  it didn't state the Government's main objective to frame me.

13  All he was saying is that they were supposed to have been

14  paying someone.  But now he told you that it was a made up

15  story.  He didn't put that information on Janet Reno's letter.

16              THE COURT:  Mr. Malone, I do not remember him saying

17  anything about any made up story.

18              DEFENDANT:  Yes, sir.

19              THE COURT:  I'm saying that there's a record of this,

20  and it will all be on the record, and that's what we will go

21  by.  All right.  Mr. Armstrong.

22              MR. ARMSTRONG:  Your Honor, a key phrase that you just

23  mentioned is if I feel they're violating the Defendant's rights

24  --

25              THE REPORTER:  I'm sorry, I didn't understand you.
```

1          MR. ARMSTRONG:   A key phrase is what Your Honor and
2   Mr. Malone have just said, if I felt his rights were being
3   violated.   Your Honor, I don't know if Mr. Malone's rights have
4   been violated or not.   I do feel that there is something very
5   unusual or fishy going on.   I heard what Your Honor said.   I
6   talked to Deborah Griffin.   She was kind enough to fax me
7   debriefing notes of one of the witnesses that I spoke with
8   about three days after I spoke with them that told the exact
9   opposite of what that witness had told me.

10         Thinking about it for several days and informing Mr. Malone
11  of this, I still was very confused as to exactly what I should
12  do.   So, what I did was to write a five-page letter to the
13  General Counsel of the Disciplinary Commission of the Alabama
14  State Bar explaining the situation and asking for some
15  assistance.   They responded.   Mr. Malone has a copy of that
16  letter.   They responded, within a matter of three to four days
17  received back to me, gave me some directions and indicated that
18  they did not feel there would be any ethical impropriety to
19  writing to Janet Reno as long as it was done under certain
20  conditions.   A copy of that letter was also given to
21  Mr. Malone.

22         I then drafted a letter to Janet Reno, revised it several
23  times, and mailed it out on October 21st prior -- after -- I
24  mean, prior to me even being aware that Mr. Malone had even
25  filed this motion.

1    I reviewed this letter with Mr. Malone.  I found out about

2  this motion that he filed on November 2nd when I was trying to

3  find this recusal motion that is not in the court file that he

4  referred to earlier.  I was just going to the Courthouse trying

5  to find that motion on the way to see Mr. Malone.

6    I went to Mr. Malone.  We reviewed this letter.  Mr. Malone

7  felt that I did not give my opinion strong enough in that

8  letter.  Also, there was an error in a phrasing of one of the

9  sentences that I made that Mr. Malone pointed out to me.  He

10  asked me if I would write and reiterate to Janet Reno that I

11  felt that there's something that needed to be investigated.  I

12  indicated to him I would, and I did.  And Mr. Malone also has a

13  copy of that.

14    Ms. Griffin is not aware of virtually any of that that I

15  have just indicated to the Court because it was something that

16  I did through the General Counsel, and I believe I followed the

17  proper procedures.

18        THE COURT:  All right, sir.  I don't question that.

19  All right.  Do you dispute what your attorney has said?

20        DEFENDANT:  Yes, I do.

21        THE COURT:  All right.  Tell me specifically what you

22  disagree with.

23        DEFENDANT:  The fact that he failed to express what he

24  actually expressed to me on that letter.  He told me that --

25  well, the same as he told you, that the people that he had

```
 1  interviewed said that it was a made up story, that the
 2  Government is trying to get these witnesses to testify.
 3          THE COURT:  Well, he did report it as you have
 4  complained of in this, prior to this motion.  You're not
 5  satisfied with the way he did it, but he did do it?
 6          DEFENDANT:  Yeah.  He didn't do it the way he said he
 7  would, the way we agreed upon.  And he also failed to mail my
 8  testimony as well.
 9          THE COURT:  Well, did you mail your testimony?
10          DEFENDANT:  (No audible response.)
11          THE COURT:  Did you attempt to mail your testimony?
12          DEFENDANT:  No, sir.
13          THE COURT:  Did you make any complaint to the United
14  States Attorney?
15          DEFENDANT:  No, sir, but I --
16          THE COURT:  Or Attorney General, I'm sorry.
17          DEFENDANT:  No, sir.  I spoke with my aunt and asked
18  her to do it for me, but she didn't have my, you know, my
19  letter that I gave to Mr. Armstrong.  He said that he would
20  file it.
21          THE COURT:  All right.  So, your complaint against
22  Mr. Armstrong in that regard is that he did not write the
23  letter in the same form that he talked to you about what he --
24  what, it was his opinion concerning that investigation?
25          DEFENDANT:  Right.  And he also failed to send my
```

1    letter on what happened with me and the agents regarding this

2    investigation the night of the -- well, not of the murder but

3    the night of --

4            THE COURT:  All right.  Do you want this letter to be

5    introduced in evidence that he wrote?

6            DEFENDANT:  That I wrote?

7            THE COURT:  That he wrote to the U.S. -- to the

8    Attorney General.

9            DEFENDANT:  Yes, sir.  I would like for that letter to

10   be introduced and my letter as well that I gave him to send to

11   the U.S. Attorney General.

12           THE COURT:  And do you have your letter?  Does he have

13   your letter?

14           DEFENDANT:  He should have it, yes, sir.

15           THE COURT:  Both those letters?

16           DEFENDANT:  Yes, sir.

17           THE COURT:  And are you offering those in evidence

18   that you want the Court to consider?

19           DEFENDANT:  (No audible response.)

20           THE COURT:  You don't have to.  I'm not trying to get

21   you to put them in.  I'm asking you if you want to.  If there's

22   any question in your mind, then you need the advice of counsel.

23           DEFENDANT:  Well, the letter he wrote, it's not that

24   beneficial to me.  Like I said, he didn't --

25           THE COURT:  Well, we don't -- the Court cannot

1    determine whether it's beneficial to you or not without having

2    the letter before it to see it.  Mr. Armstrong --

3              DEFENDANT:  Yes, yes, sir.

4              THE COURT:  -- has testified exactly what he has said,

5    you have testified generally to the same thing, that he has

6    testified -- that he has stated that he has written that

7    letter, that it may not contain exactly how you asked it to be

8    written, but he wrote it in the form after a discussion with

9    the -- with the Alabama Bar Association Ethics Committee.  And

10   he is a lawyer, and he's required to provide and follow certain

11   rules of ethics, Mr. Malone.

12             DEFENDANT:  Well, it wasn't how I asked it to be

13   written.  It was how he explained it to you.  That's how I

14   wanted him to explain it on the letter.

15             THE COURT:  Well --

16             DEFENDANT:  He just left out certain parts that I felt

17   were --

18             THE COURT:  All right.  Tell me what he left out that

19   you think were important that he should have included.

20             DEFENDANT:  The part about --

21             THE COURT:  Well, you say the part.  There is no part,

22   is there?  It's not in.

23             DEFENDANT:  Right.

24             THE COURT:  Okay.  Tell me what he left out.

25             DEFENDANT:  About this being a made up story by the

1    Government to get certain inmates to -- to coerce certain

2    inmates on this information to where they would be reliable

3    witnesses or appear to be reliable witnesses to testify against

4    me on that -- on the investigation that's ongoing right now.

5              THE COURT:  All right.  And he didn't say that?

6              DEFENDANT:  No, sir.

7              THE COURT:  All right.  All right.  Let's go on.  All

8    right.  The next complaint is Mr. Armstrong was instructed by

9    Judge Vollmer, who has also shown demonstrative bias on the

10   Defendant's behalf.  However, during jury deliberations, after

11   hearing some of the inmates' statements from Mr. Armstrong,

12   instructed him to relay the information to the Attorney

13   General, Janet Reno.  This is the same --

14             DEFENDANT:  It's the same.

15             THE COURT:  -- issue, right?  All right.  All right.

16   Since then, Mr. Armstrong has been ignoring his duty as an

17   officer of the Court by making up excuses and telling the

18   Defendant he did not know the proper procedure or the proper

19   authorities which to rely -- excuse me, relay this information.

20       And now we have had him testify, and you do not dispute

21   that he did send this on to the Attorney General before you

22   filed this motion.  You were not aware of it at that time.

23             DEFENDANT:  I wasn't aware of it, yeah.

24             THE COURT:  All right.  That's fine.

25             DEFENDANT:  Okay.

1          THE COURT:  And for these reasons, you ask the Court's

2   motion to be granted -- your motion to be granted.  All right.

3   Do you have anything else to complain about Mr. Armstrong other

4   than what you have said?

5          DEFENDANT:  Well, back to the issue about the tape, I

6   --

7          THE COURT:  The tape is the Kastigar tape?

8          DEFENDANT:  Uh-huh.

9          THE COURT:  Well, haven't we gone over that already?

10         DEFENDANT:  Yes, sir.  You know, there's something

11  else I thought about.

12         THE COURT:  All right.  All right.  Thank you,

13  Mr. Malone.  You may come down.

14         DEFENDANT:  Sure.

15         THE COURT:  All right.  Mr. Armstrong, I have certain

16  questions for you.  Mr. Armstrong, there is no -- you may come

17  down, Mr. Malone.  Mr. Armstrong, so you understand, you are an

18  officer of this Court.  I do not generally put officers of the

19  Court under oath.  I do not question your testimony in any way.

20  However, since Mr. Malone is making these complaints, since he

21  has been put under oath, I expect that it is proper to put you

22  under oath as well.  I want you to understand that is the

23  reason that it is done.

24         MR. ARMSTRONG:  Yes, sir.

25         THE COURT:  All right.  Mr. Armstrong, if you would

1     raise your right hand, the court clerk will put you under oath.

2          (Mr. Armstrong was placed under oath.)

3          THE COURT:  All right.  Why don't you come up here, if

4     you will.

5          (Brief pause.)

6          THE COURT:  All right.  You did not bring anything

7     with you, apparently.  Do you have a copy of his motion?

8          MR. ARMSTRONG:  Yes, sir.

9          THE COURT:  Would you like to get it so we -- I'm

10    going to ask you if you have any, anything that you would like

11    to remark on in connection with his allegations made against

12    you that you have not already remarked on.

13         (Brief pause.)

14         MR. ARMSTRONG:  Your Honor, the first thing dealing

15    with the Kastigar, I think we've gone over that in great

16    detail.  And if Mr. Malone indicates to me that he did not

17    point out issues or areas that he felt were not correct, how in

18    the world could I put them in the motion?  Because he put, he

19    put -- he gave me areas, and I put them in the motion.  How

20    could I put them in the motion if I wasn't even present in the

21    Kastigar hearing?

22         THE COURT:  All right, sir.  The question I have to

23    you in that regard is he testified on the stand here that he

24    only told you one thing, and that you didn't -- that you went

25    into other matters other than -- you're saying that everything

 1   that you went in -- that you went into was given to you by him?

 2        MR. ARMSTRONG:  Yes, sir, because I wasn't present at

 3   the Kastigar hearing.

 4        THE COURT:  All right.

 5        MR. ARMSTRONG:  But there are other points that

 6   Mr. Malone has said previously that he has not indicated to me

 7   that I have not raised because I don't know what they are.

 8        THE COURT:  And he still has not told you?

 9        MR. ARMSTRONG:  He still hasn't told me.

10        THE COURT:  All right.  Go on.  What else?

11        MR. ARMSTRONG:  Dealing with Bert Noojin, Your Honor,

12   I did have a very long discussion with Mr. Noojin.  I discussed

13   what his potential testimony would be with Mr. Malone.  That's

14   how he was able to tell the Court part of what he told you

15   about Mr. Noojin's testimony.

16      Mr. Noojin indicated to me -- I do not have his notes in

17   front of me from my conversations with him, but it was

18   determined that Mr. Noojin could testify, I felt, on issues

19   that could substantially hurt Mr. Malone.  I cannot give you

20   any of the exact details.  I just don't have those notes.  But

21   this was discussed with Mr. Malone, and it was jointly decided

22   not to call Mr. Noojin as a witness.

23        THE COURT:  All right, sir.

24        MR. ARMSTRONG:  Dealing with Donald Partridge, that

25   was pretty much the same thing, even though that's the other

1  case.

2      This letter of Mamie Floyd, to this day I haven't seen that

3  letter.  I have been told that that letter exists.  I've been

4  told it was sent to his wife.  His wife was subpoenaed.  His

5  wife was here.  I asked her about the letter.  She indicated to

6  me that it did not say anything whatsoever that would help

7  Perry Malone at trial.

8      Apparently, the letter has now been given to one of

9  Mr. Malone's aunts, and I still haven't seen the letter.  It

10  possibly could have been used in cross examination of Mamie

11  Floyd, but in my opinion during the trial of Mamie Floyd or the

12  testimony of Mamie Floyd, it was the cross examination, I think

13  Mamie Floyd was more of a benefit to Mr. Malone than she was to

14  the Government.  But I still haven't seen that letter.

15      Dealing with Judge Butler's motion to recuse, as I said, I

16  still cannot find a copy of that, but there were items

17  contained that Mr. Malone had indicated that, Your Honor, I

18  would not put my name to.  I do not believe that Judge Butler

19  was guilty of the allegations that were made by Mr. Malone.

20      In dealing with that, this was still at the very beginning

21  of my appointment here, I was still reviewing the records, and

22  I indicated that to Mr. Malone.  The more I started to review

23  the records, this was still prior to the Court granting

24  Mr. Malone's request to withdraw his guilty plea, I felt and I

25  informed Mr. Malone that he would be better off because of the

1   investigation that I made to continue with Judge Butler because

2   I felt there was a much stronger chance of Judge Butler

3   granting his motion to be allowed to withdraw his plea than if

4   it would have been in front of Your Honor, because I felt after

5   reviewing the record that Judge Butler didn't realize what he

6   had done on the record, and I felt personally that Judge Butler

7   would correct himself much stronger, with all due respect to

8   Your Honor, than you would have overruled a judge sitting here

9   in the same courtroom.

10      That was discussed with Mr. Malone.  It was determined not

11  to refile.  We had the hearing.  That's exactly what Judge

12  Butler did.  But after that hearing, in my opinion then, when

13  Judge Butler allowed Mr. Malone to withdraw his plea, Judge

14  Butler then knew more about the case than an average judge

15  sitting on a trial would know.  I then filed a motion for Judge

16  Butler to recuse himself on those grounds, which was denied.

17      Then what Judge Butler did -- I advised Mr. Malone many,

18  many times there's an old saying of the law, be careful what

19  you ask for sometimes, you might get it.  And I advised him

20  that I thought he'd be better off trying that case with Judge

21  Butler instead of Your Honor because I felt that Judge Butler

22  would have allowed certain evidence in that I felt that Your

23  Honor would not.  Mr. Malone disagreed.  We filed that motion.

24  It was denied by Judge Butler.  And then Judge Butler

25  immediately turned around and assigned the case to Your Honor

1   or transferred the case to Your Honor, and Your Honor did not

2   allow the exact testimony that I was afraid that Your Honor

3   would not allow that I felt Judge Butler would.

4           THE COURT:  All right, sir.  Well, whether the Court

5   is right or wrong will be decided by the Court of Appeals.

6           MR. ARMSTRONG:  Yes, sir.

7           THE COURT:  All right.  Anything else you'd like to

8   add to that?

9           MR. ARMSTRONG:  Your Honor, just a general statement.

10  Just because Mr. Malone, and just because I have talked with

11  these three people, because it was indicated that they may have

12  something to do with the drug conspiracy, Your Honor, whether

13  or not those three people are making up a conspiracy or the

14  Government is making up a conspiracy or anyone is making up a

15  conspiracy is not for me to determine.  I don't know.

16     If his rights are being violated, it's another thing.  To

17  this day, I don't know if his rights are being violated.  And I

18  did what I thought was proper in going to the Attorney -- to

19  the General Counsel explaining this, and that's exactly what

20  was done.

21     Your Honor, I don't have any other comments, I don't

22  believe.

23          THE COURT:  All right.  Mr. Armstrong, let me ask you

24  this, sir:  You have had a lot of complaints made against you

25  by Mr. Malone.  We had set this morning a sentencing hearing.

1  It is my intention to go forward with that sentencing hearing

2  unless you believe that you are unable or unwilling to go

3  forward with that hearing and that you tell me that you cannot

4  represent Mr. Armstrong -- Mr. Malone in this hearing.

5         MR. ARMSTRONG:  Your Honor, I have already prepared,

6  and it's sitting in my notebook right here, a motion to

7  withdraw as Mr. Malone's attorney after sentencing is

8  completed.  I think as an officer of the Court, knowing as much

9  as I do about this case, filing all necessary objections that I

10  think have already been filed, I don't see any reason why the

11  sentencing cannot go forward.  If Mr. Malone does not want it

12  to go forward, I would be more than happy to amend my motion to

13  withdraw and file it right now prior to sentencing.

14         THE COURT:  No, sir.  The Court is not going to allow

15  any defendant not to have his matter go forward by making

16  allegations in this Court.  The Court's opinion is that you

17  have represented Mr. Armstrong -- excuse me, Mr. Malone fully

18  and completely in this case.  I have had a great deal of time

19  put in with Mr. Malone.  I do not mind that.  That is my

20  obligation to Mr. Malone.  I believe I have given him every

21  opportunity.  I intend to continue to give him every

22  opportunity.  He will have every opportunity on appeal on all

23  his other motions, but this matter is going forward this

24  morning.  You are going to remain as his attorney for the

25  sentencing, and we are going forward with that sentencing at

1    this time.

2        Thank you, sir.  You may be seated.

3            MR. ARMSTRONG:  Your Honor, there is one point after

4    sentencing that we would like to approach for a sidebar after

5    sentencing.

6            THE COURT:  All right.  Do you want to do that now or

7    later?

8            MR. ARMSTRONG:  It could wait after.

9            THE COURT:  Let's wait until after the sentencing.

10       (Brief pause.)

11           THE COURT:  All right.  Does either side know of any

12   reason why sentencing should not be pronounced at this time,

13   for the Government?

14           MS. GRIFFIN:  No, sir.

15           THE COURT:  For the Defendant?

16           MR. ARMSTRONG:  No, sir.

17           THE COURT:  All right.  There are certain objections

18   that have been filed on Mr. Malone's behalf.  Do you have a

19   copy of the Court's rulings on the tentative findings in

20   response, Mr. Armstrong?

21           MR. ARMSTRONG:  No, sir, I do not.

22           THE COURT:  Well --

23           MR. ARMSTRONG:  I have Probation's addendum to it, but

24   I don't have the tentative rulings by the Court.

25           THE COURT:  Mary, were these not sent out to

1   Mr. Armstrong?  Do you have a copy?  Would you give

2   Mr. Armstrong a copy of those?

3          THE CLERK:  This is the original.

4          THE COURT:  Mr. Armstrong, if you will come forward,

5   she'll give you a copy of these.  And we'll get them back,

6   Mary.

7          THE CLERK:  Yes, sir.  This is the original.

8          THE COURT:  All right.  I am sorry, Mr. Armstrong,

9   that you don't have a copy of this.

10         MR. ARMSTRONG:  That's okay.

11         THE COURT:  If you will look at them with Mr. Malone,

12  and we will go forward momentarily.  Do you have a copy,

13  Ms. Griffin?

14         MS. GRIFFIN:  No, sir, Your Honor.  And when

15  Mr. Armstrong finishes reviewing it, I'll review it.

16         THE COURT:  Well, here, you can look at mine.  Mary,

17  we need to get these out to all parties.  I don't know what

18  happened.  I . . . .

19     (Off the record discussion.)

20         MR. ARMSTRONG:  Your Honor, there's always a problem

21  with getting those rulings out.  And very rarely does an

22  attorney have --

23         THE COURT:  Well, we're going to try to do something

24  about that right now, Mr. Armstrong.  Mary?

25         THE CLERK:  Yes, sir.

1        THE COURT:  I am advising you that in the future, as

2   soon as we get -- let me advise it for Probation's and for all

3   parties.  The Defendants, as you know, Mr. Armstrong, have to

4   file objections at least 10 days before the sentencing hearing.

5   That makes it very -- a very close question.

6        I am of the opinion that I am going to amend my ruling.  I

7   know that the requirements are that you file it 10 days, but I

8   am going to advise Probation that in the future, I am going to

9   request that we have these hearings delayed so that the

10  Defendants can get these objections in at least 20 days before

11  the sentencing hearing and file objections at least 15 days

12  before the sentencing hearing.  Now, that will not be required

13  under the Federal law, but it will be required by this Court's

14  rule.

15       All right.  Mr. Armstrong, have you had an opportunity to

16  review those as yet?

17       MR. ARMSTRONG:  Yes, sir.

18       THE COURT:  And these are objections that you have

19  made, so that you are aware of what the objections are.  We'll

20  go through them, but I do not plan to spend a great deal of

21  time on them.  This is the Position of the Parties with Respect

22  to the Defendant, Sentencing Factors for the Defendant, and

23  these are objections filed by you, Counsel, on behalf of

24  Mr. Malone.

25       In connection with your objections numbered -- excuse me,

1   objections two, paragraphs 10, 14, 15, 21, 23, and 31, the
2   Court will advise you that the Court has a copy of the Court's
3   notes on this in this case, and will rely upon that trial
4   testimony.  The testimony that the Court is aware of is
5   adequate to allow the Court to conclude that the Defendant is
6   responsible for more than 1.5 kilos of crack cocaine in the
7   offense and did give untruthful testimony at trial.

8       I have got a copy of the transcript of Mr. Malone's
9   testimony at trial.  There are numerous instances where this
10  Court concludes that Mr. Malone was not truthful in his
11  testimony.  If the Defendant desires, Mr. Armstrong, the Court
12  will require the Government if the Government is in a position
13  to provide the information on the untruthful testimony.

14      I have noted here the areas of what I consider to be
15  untruthful testimony of the Defendant.  It generally relates to
16  the fact that he testified contrary to most of the witnesses in
17  the trial of this case as to the facts involved.

18      All right.  Insofar as objection number two, the Court has
19  simply noted that he objects to the probation officer having
20  reported that the Defendant required the Government to try the
21  case before the jury.  The Court simply notes that.  It has no
22  effect on the Court's final decision in the case.

23      In connection with objection to paragraph 25, not receiving
24  credit for acceptance of responsibility, as this Court is aware
25  and from the testimony given by the Defendant throughout the

1   trial, he denies his involvement in this and has not, as far as

2   I know, ever accepted responsibility in the case.  And the

3   Court will overrule that objection.

4       In connection with your objections to paragraphs 34 and 36

5   of the Presentence Investigation Report, and the Court speaks

6   only as it relates to Case Number 98-183, the calculations are

7   correct on this case facts.  I have reviewed those.  I am

8   satisfied that they are correct.  I will, however, hear from

9   you, Mr. Armstrong, if you desire in connection with paragraphs

10  34 and 36 as to how you say they are incorrect.

11      All right.  On issue -- on paragraphs 83 and 85, we will

12  have a hearing on that aspect.

13      On paragraph 84, the Court makes no ruling in this case, as

14  that relates to Case Number 98-184.

15      Insofar as your objection to paragraph 64, it is an

16  objection to the Defendant being addicted to crack cocaine.

17  The Court notes that, and the Court will not sentence this

18  Defendant in connection with any addiction and will not require

19  the Defendant at sentencing to undergo treatment for -- a

20  comprehensive drug treatment.  In connection with paragraph --

21  it will not otherwise affect the sentence.

22      In connection with paragraphs 65 and 76, the Defendant

23  objects to being a current user of marijuana and states that he

24  does not owe attorney's fees.  The Court notes that and will

25  accept that statement by the Defendant.  And it will have no

1    effect on this sentence.

2        In connection with the last objection, paragraph 77, the

3    Defendant denies failure to report ownership of vehicles

4    registered to him.  The Court will note that denial, and will

5    further note that this will not have any effect on the

6    sentencing.

7        All right.  Mr. Armstrong, I will hear from you on the

8    issues raised in paragraphs 83 and 85 and also any objections

9    that I have ruled on that you would care to speak to

10   specifically that is not completely ruled on to your

11   satisfaction or to the Defendant's satisfaction.

12             MR. ARMSTRONG:  Your Honor, specifically in relation

13   to paragraphs 83 and 85, those are statutory calculations.

14   This Defendant submits that he is not guilty of any of these

15   charges, and he should not be sentenced at all.  Those are the

16   statutory comments, and they are correct.  He just denies that

17   he should be sentenced at all.

18             THE COURT:  All right.  Very good.  The Court will

19   note that and overrule those objections.  Now, I believe I also

20   related that you could, you could provide any other objections

21   specifically.  Although the Court has indicated its ruling on

22   this, I will hear from you if you have a specific objection

23   that you do not think that the Court has satisfactorily

24   addressed.

25             MR. ARMSTRONG:  Your Honor, Mr. Malone indicates to me

1   that he disagrees with the Court and would like to know where

2   he is accused of testifying untruthfully in relation to your

3   tentative ruling number one, dealing with paragraphs 10, 14,

4   15, 21, 23, and 31.

5           THE COURT:  All right.  That is an issue that this

6   Court took up personally.  The Court, as you know, has a right

7   where the Court is of the opinion that the Defendant has

8   testified untruthfully to add two points to the sentence.

9       In this case, it will have no effect whatsoever on the

10  final sentence, Mr. Malone, but the Court still is of the

11  opinion that you were untruthful in your testimony.  And when I

12  say that, I have noted, I have some yellow stickers on all of

13  the areas that I will make a part of this record so you may

14  have it if you choose for the -- for your appeal.  The Court is

15  of the opinion, as I stated earlier, that you testified

16  untruthfully in connection with the testimony that you gave

17  contrary to all of the witnesses who testified in the case.

18      Let me hear from the Government on that position.  If the

19  Government is of the opinion that this is not correct, then I

20  will not insist that the Government defend the Court's opinion.

21          MS. GRIFFIN:  Your Honor, we agree wholeheartedly with

22  the Court that he perjured himself numerous times in his own

23  defense when he took the stand.  We ordered the transcript of

24  his testimony between the two trials, and we provided a copy of

25  that testimony to Mr. Armstrong prior to the beginning of the

1  second trial, Criminal Number 184, before Judge Butler.

2  Mr. Malone did not take the stand in the second trial, so that

3  that testimony was not used to impeach him during that trial.

4     He perjured himself numerous times as to his drug dealings

5  with the witnesses that have testified as to his participation

6  in the drug activity. We think the Court has correctly

7  reviewed the transcript and determined on numerous occasions.

8  We would ask that the Court document the pages that the Court

9  has made a finding so that that will be perfected for the

10  record.

11     And further, we agree with the Court that that ruling has

12  no impact on the sentence. He is being sentenced because of

13  his statutory requirements and his prior criminal history. And

14  that would be the same if he had more than two ounces of crack

15  cocaine and had no finding of obstruction of justice through

16  the commission of perjury during the trial.

17     So, the Court's finding that he committed perjury, although

18  it gives him two guidelines points, has no bearing on his

19  statutory sentencing.

20        THE COURT: All right. Mr. Armstrong, do you have

21  anything to comment?

22        MR. ARMSTRONG: No, sir.

23        THE COURT: All right. Bring the Defendant forward,

24  please, Mr. Armstrong.

25     (Brief pause.)

| 1 | THE COURT:  I believe, Mr. Malone, that the Court |
|---|---|

1       THE COURT:  I believe, Mr. Malone, that the Court
2  failed to make a ruling on your motion.  The Court denies your
3  motion to have your attorney withdraw, as you know, from the
4  fact that I have gone forward.  I will have that put in the
5  record so that there is no question that I have denied that and
6  we have had this hearing with Mr. Armstrong representing you.
7       All right.  The Court would find that under the trial of
8  this case and the evidence presented, and the fact that the
9  Defendant was made aware of the fact that he had prior
10  sentences for drug dealing on at least two occasions and that
11  this requires a statutory -- allows for a statutory sentence
12  relating to the fact that this is the third offense, the Court
13  finds that the Total Offense Level in this case is a 40,
14  Criminal History Category of VI, which provides under Count One
15  on which the Defendant was found guilty to life imprisonment.
16       (Brief pause.)
17       THE COURT:  Mary, can you find the portion of the
18  record which provides a notice to this Defendant of the prior
19  convictions?  Do you have that on your --
20       THE CLERK:  Sarah Jane might be more familiar with it.
21       (Off the record discussion.)
22       THE COURT:  All right.  The Court also finds that the
23  Government has properly notified the Defendant of the
24  enhancement information that I have that was filed before the
25  Court in this case, 98-183, on July the 30th, in which the

1  Government pleads the statute, 21, United States Code, Section
2  851(a), which sets forth facts concerning two previous
3  convictions of the Defendant each for felony drug offenses,
4  which previous convictions expose the Defendant to increased
5  punishment if convicted of any drug felony count in the
6  superseding indictment herein.  It sets forth the two prior
7  convictions, one on December the 13th, 1995, possession of
8  cocaine, sentenced in the Circuit Court of Mobile County,
9  Alabama, and convicted in Case Number 94-3177, in which the
10  Defendant was represented by counsel, and the Defendant has
11  been provided with a judgment in that case and is aware of this
12  conviction; and on a conviction of June 25th, 1991, the
13  Defendant pled guilty to conspiracy to distribute cocaine and
14  was sentenced in Mobile County Circuit Court, Mobile, Alabama,
15  convicted of the charge, Case Number 90-1262, was represented
16  by counsel, Defendant was provided with a copy of this judgment
17  and was aware of the conviction; that the convictions are final
18  within the meaning of 21, United States Code, Sections 841(b)
19  and 962(b).  These two prior felony drug convictions would
20  result in the Defendant being sentenced to a mandatory term of
21  life imprisonment without release under 21, United States Code,
22  Section 841(b)(1)(A).

23      The Court previously filed this enhancement on November the
24  24th, 1998.  This was filed with this Court and copies given to
25  the Defendant, which will require the sentence that is being

1   imposed.

2       Before sentence is imposed, Mr. Malone, do you have

3   anything to say or to add?

4           DEFENDANT:   None other than I, I'm not -- I'm

5   certainly not asking the Court to have mercy on me because, I

6   mean, after going through the procedures here in this Court, I

7   can't see where there's mercy in this court system period, you

8   know.   And I just, I just -- I know that everything is in God's

9   hands, and I know that things really need to change here in

10  this court system because the Government is constantly

11  violating people's rights here, and the Court is taking part of

12  it, and I'm a witness of that.   And I'm just believing that God

13  is going to do that.

14          THE COURT:   Well, Mr. Malone, this Court hears a lot

15  of complaints.   I have dedicated my life to justice, and I want

16  you to know that.   You apparently don't believe it.   I don't

17  know whether you don't believe it or you don't want to accept

18  it, you don't want to accept your guilt.

19      The Court is of the opinion that Mr. Armstrong did a superb

20  job in this case throughout the trial.   This Court feels that

21  you were given every opportunity throughout this trial to get a

22  fair trial.   The Court rules as it's required to rule.   The

23  Court is not surprised at your attitude because your attitude

24  has been expressed throughout the trial and throughout all of

25  these proceedings.   But I hope that anyone who has any question

1  about your rights being given to you will try to review this

2  record and review all of the matters that have come before this

3  Court and make a determination for themselves as to whether or

4  not you were given a fair trial.

5          DEFENDANT:  Yes, sir.

6          THE COURT:  And not rely on either you or me.

7          DEFENDANT:  Amen.

8          THE COURT:  All right.  Pursuant to the Sentencing

9  Reform Act of 1984, it is the judgment of the Court that the

10  Defendant, Perry Malone, is hereby committed to the custody of

11  the United States Bureau of Prisons to be imprisoned for a term

12  of life.  This term consists of a sentence of life imprisonment

13  on Count One in Case Number CR-98-183, and 240 months as to

14  Count Two in Case Number 98-183, those two sentences to run

15  concurrently, one with the other.

16      If the Defendant is released from imprisonment, the

17  Defendant shall be placed on supervised release for a term of

18  10 years.  This term consists of 10 years as to Count One of

19  Case Number 98-183 and three years as to Count Two in Case

20  Number 98-183, said supervised release terms to run

21  concurrently, one with the other.

22      Within 72 hours of release from custody of the Bureau of

23  Prisons, the Defendant shall report in person to the probation

24  office in the district to which he is released.  While on

25  supervised release, the Defendant shall not commit any Federal,

1  state, or local crimes, he shall be prohibited from possessing

2  a firearm or other dangerous device, and shall not possess a

3  controlled substance.  In addition, he shall comply with the

4  standard conditions of supervised release as recommended by the

5  United States Sentencing Commission and on record with this

6  Court.

7      The Court orders the Defendant also comply with the

8  following special conditions of supervised release:  He shall

9  participate in a program of testing and treatment for drug

10 and/or alcohol abuse as directed by the Probation Office.

11     The Court sentences the Defendant to life as this is the

12 only sentence available.  The sentence imposed addresses the

13 seriousness of the offense, the sentencing objectives of

14 punishment, deterrence, and incapacitation.

15     The Court finds the Defendant does not have the ability to

16 pay a fine; therefore, no fine is imposed.

17     It is ordered that the Defendant pay a special assessment

18 in the amount of $100 on each count of conviction, 98-183, and

19 Count One of 98-183 and Count Two of the same case number, for

20 a total assessment of $200, which shall be due immediately.

21     Mr. Malone, you have a right to appeal the sentence I have

22 just imposed.  If you desire to appeal, you must notify this

23 Court within 10 days of today's date in writing of your intent

24 to appeal.  Otherwise, you may waive your right to appeal.  In

25 the event you are unable to pay the cost of an appeal or employ

1  an attorney, an attorney will be appointed for you and the cost

2  of the appeal will be paid for by the Government.

3     If you have any objections to the sentence imposed or the

4  findings of fact or conclusions of law made by the Court, you

5  should make those objections at this time or run the risk of

6  waiving them on appeal.  You will be given all objections that

7  your counsel has already filed in the case, but if you have any

8  in addition to that, you may file those at this time.

9        MR. ARMSTRONG:  Your Honor, the only thing we would

10  add is that we would respectfully submit to the Court that the

11  enhancement provisions for the purpose of appeal are

12  unconstitutional to preserve Mr. Malone's right to appeal that

13  to a higher court.

14        THE COURT:  All right.  Anything further, Mr. Malone?

15        MR. ARMSTRONG:  Your Honor, there's one point at

16  sidebar that we'd like to address.

17        THE COURT:  All right.  And I will at this time, I

18  understand you are filing a motion to be relieved of

19  representing the Defendant from this time; is that correct?

20        MR. ARMSTRONG:  Yes, sir, Your Honor.  It was my

21  intention to request that Mr. Malone file notice of appeal and

22  also a motion to withdraw.

23        THE COURT:  What the Court will do is this:  I will

24  suggest that I will demand of you that you file his motion to

25  appeal before you withdraw so there's no question about his

1  having his right to appeal.  And after that time, I will grant

2  your motion to be relieved of representation, and I will send

3  this file to the magistrate judge for the appointment of

4  another attorney unless Mr. Malone has an attorney that he's

5  going to employ.  Do you have an attorney you're going to

6  employ?

7       DEFENDANT:  I am, Your Honor.  I don't --

8       THE COURT:  All right.  Well, if you'll employ your

9  attorney, have him file an appearance, and we will have that

10 attorney appointed.  Before we close, I'm going to give this to

11 the clerk, excerpts of the trial proceedings, my notes as to

12 the testimony that I relied upon among other portions that I

13 feel that the Defendant is required to get a two-point increase

14 for being untruthful on the stand.  It will be made part of the

15 record for your appeal, Mr. Malone.

16    All right.  I'll see you at sidebar on any issues that you

17 have.  Mary Frances, I'll need you.

18       (Sidebar conference, on the record, Defendant present,

19        Counsel present, and case agents.)

20       THE COURT:  Okay.  Mr. Armstrong, before we go any

21 further, I do want to thank you very much for your activity in

22 this case.  I think you have handled it as an attorney at the

23 highest degree of competence and the highest degree of acting

24 for a client who has criticized you in every portion of the

25 record.  I think you still have done an excellent, outstanding

1  job for him, And I thank you.

2          MR. ARMSTRONG:  Thank you, Your Honor.

3          THE COURT:  All right.  I'll hear from you.

4          MR. ARMSTRONG:  Your Honor, I'm not exactly positive

5  how to handle this, but Mr. Malone has previously testified

6  against other individuals, and we'd request the Court to

7  somehow instruct the Bureau of Prisons that Mr. Malone not be

8  housed with these individuals.  I do know some people's names.

9  I don't know some people's names.  The people's name I know is

10  an individual by the name of Bello, B-e-l-l-o, Garcia,

11  G-a-r-c-i-a, that is also known as Cuban Man; an individual by

12  the name of Steve Warren, an individual by the name of Carl

13  Morrissette, an individual by the name of Arthur Patterson.

14      There are a couple individuals by the name of Chris, last

15  name unknown, but also known as Block, B-l-o-c-k, and an

16  individual by the name of Jim, last name unknown, who is a

17  partner of Chris', that Mr. Malone has informed me of other

18  officers who could give me those people's names.  We have

19  attempted to communicate with them and have them call me back.

20      Mr. Malone tells me today that he believes that Agent Don

21  Walton knows the name -- the last name of this Chris, also

22  known as Block, and Jim, and we would ask the Court to somehow

23  make arrangements that Mr. Malone not be housed with these

24  people along with all people associated with this 183 case and

25  184.

1        MS. GRIFFIN:  Judge, we intend to file a request with

2   the Bureau of Prisons with a list of separatees.  Mr. Malone

3   did not testify against Steve Warren.  I prosecuted that case.

4   Steve Warren entered a guilty plea.

5        Mr. Garcia --

6        THE COURT:  Well, let me stop you.  Did he know that

7   he was going to testify against him?

8        MS. GRIFFIN:  I do not know.  However, I only know of

9   one trial that he testified in Federally, and we provided that

10  transcript to Mr. Armstrong in discovery in this case.  We will

11  file a separatee as to that case.  I don't mind filing it as to

12  Steve Warren or Mr. Garcia, although he did not testify against

13  either of them.  I don't have any idea who Chris or Jim could

14  possibly be.  Christopher Murray, and he did not testify --

15  Christopher Murray pleaded guilty.

16        THE COURT:  All right.  Counsel, so you understand,

17  the Defendant in this case has every right of any other

18  Defendant who has -- you know that, I know that, we all know

19  that.  Mr. Malone should know it, even though he doesn't

20  necessarily agree.

21        What I'm telling you is this:  If he was put -- if these

22  individuals, if he was going to testify against them, even

23  though they pled guilty, I would expect the Government to not

24  place this man who was going to testify against someone, he may

25  not have testified, in the event that that person was aware or

1  could have been aware of the fact that Mr. Malone would or

2  might testify against him.

3          MS. GRIFFIN:  Judge, as to any person that we gave any

4  statement or any indication to that Mr. Malone might, we will

5  confer with the agents.

6          THE COURT:  That's all I ask.

7          MS. GRIFFIN:  And Mr. Malone can provide those names.

8  I am not aware that that was done in many of these.  If

9  Mr. Malone feels otherwise, he can give that list right now to

10 Mr. Armstrong and we will check them out.  We'll also file

11 under seal with this Court the request to Bureau of Prisons for

12 separatees, and we will provide Mr. Armstrong a copy if he sees

13 fit and he can provide it to his attorney -- I mean, to his

14 client.

15         THE COURT:  All right.  That's all I can ask.

16         MR. ARMSTRONG:  Do they know the last name of this

17 Jim, partner of Chris'?

18         DET. PAUL BURCH:  He was never caught.

19         MR. ARMSTRONG:  One more question.  This aka Batman,

20 that was the nickname of Steve Warren or somebody else?

21         DET. PAUL BURCH:  Darryl something.

22         MS. GRIFFIN:  Darryl Thomas.

23         MR. ARMSTRONG:  Darryl Thomas would be another name we

24 would add, Your Honor.  Your Honor, those are all the names

25 that Mr. Malone has given me.

1          MS. GRIFFIN:  All right.  Judge, I want to make sure I

2    have Darryl Thomas, Steve Warren, Bello Garcia, also known as

3    Cuban Man, Carl Morrissette, Arthur Patterson, Christopher

4    Murray.  And I'm taking the name Jim, last name unknown, off

5    based on Mr. -- Off. Burch's representation that someone named

6    Jim connected with --

7          THE COURT:  Never been.

8          MS. GRIFFIN:  -- was not arrested.  Also, I'm going to

9    add on that list every male who testified that is in custody

10   against him in the trial before Your Honor and in the trial

11   before Judge Butler.  Of course, he's going to be separated

12   from the females, so there's no need to put that list.

13         THE COURT:  All right.  If you know of anyone else,

14   you let them know and they will protect you.  All right.  You

15   may not believe that, Mr. Malone, you don't believe anything,

16   but that's what the Government is supposed to do.

17         DEFENDANT:  I believe some things.

18         THE COURT:  All right.  Nothing further, we will be

19   adjourned.

20

21         (Proceedings concluded at 10:55 a.m. this date.)

22

23

24

25

CERTIFICATE

STATE OF ALABAMA)

COUNTY OF MOBILE)


    I do hereby certify that the above and foregoing transcript
of proceedings in the matter aforementioned was taken down by
me in machine shorthand, and the questions and answers thereto
were reduced to writing under my personal supervision, and that
the foregoing represents a true and correct transcript of the
proceedings upon said hearing.


    I further certify that I am neither of counsel nor related
to the parties to the action, nor am I in anywise interested in
the result of said cause.


Mary Frances Giattina, RDR, CRR
Official Court Reporter
U.S. District Court, SDAL
P.O. Box 3021
Mobile, Alabama    36652-3021
(334) 690-3003